**In re UNITED EQUIPMENT SALES CO., Debtor.**

**In re PROGRESSIVE CONTAINER CORP., Debtors.**

**James ROBBINS, Trustee, Plaintiff,**

**v.**

**John SCHUYLER, Defendant.**

**Bankruptcy Nos. HG 82 02914, HG 82 02913.**

**Adv. No. 84 0186.**

United States Bankruptcy Court, W.D. Michigan.

March 27, 1985.

Varnum, Riddering, Schmidt & Howlett, William E. Rohn, Robert A. Hendricks, Grand Rapids, Mich., for plaintiff.

Michael W. Sefton, Grand Rapids, Mich., for defendant.

LAURENCE E. HOWARD, Bankruptcy Judge.

The trustee appointed in this case, James D. Robbins, commenced this adversary proceeding against the defendant, John Schuyler, to impose personal liability upon Mr. Schuyler for damages inflicted upon the estate as a result of Mr. Schuyler's alleged breach of fiduciary duty while serving as president of the debtor in possession. John Schuyler is the former president and chief operating officer of United Equipment Corporation (trans. at 161–162). Mr. Schuyler formed United Equipment in the mid-1970's. At about the same time he formed Progressive Container Corporation. United Equipment distributed snowplows and truck bodies. Progressive Container Corporation manufactured trash compactors and containers. The two corporations merged sometime shortly before September 6, 1982. (trans. at 163.) Despite the merger, petitions for relief under Chapter 11 of the Bankruptcy Code were filed for both corporations on September 16, 1982. (During the Chapter 11 the debtor operated as one entity under the heading of United Equipment Corporation and shall be referred to as a single debtor.) After the filing this Court issued definitive orders under each name to govern the debtor's continued operation. The orders required the debtor to, *inter alia*, pay all federal, state and local taxes incurred after filing. The orders further required that all the debtor's purchases be for cash or credit not to extend for more than thirty days, absent permission of the court. Both orders state that the debtor's possession and operation are under the supervision of this Court. The United Equipment order also required the debtor to open a tax escrow account for the segregation of its payroll withholding tax payments. (Exhibits 13 and 14.) Faith Schuyler, Mr. Schuyler's twenty year old former daughter-in-law who served as the debtor's office bookkeeper set up the tax escrow account (trans. at 165, 177). Although Ms. Schuyler deposited some checks in the tax escrow account, she wrote quite a number of checks that she did not deposit because the debtor had no

money (trans. at 116). She also recorded many checks as deposited to the tax escrow account on the Report and Account forms when in fact those checks had not been deposited (trans. at 116–117). The total amount of these checks that should have been deposited in the tax escrow account is $22,664.85 (Exhibit 5). The estate has been harmed in this amount because this amount was not paid to the Internal Revenue Service and is another debt of the estate (trans. at 43, 44).

Despite the fact that the debtor had no funds to pay its taxes the defendant kept it in operation, incurring unpaid post-petition pre-conversion administrative expenses. The first falsified Report and Account was the 17th, dated January 19, 1983. Using January 19, 1983, as the turning point, the trustee has calculated that $39,510.37 in unpaid post-petition pre-conversion debt was incurred after that date, and the defendant does not contest that. (trans. at 55, 57, Exhibit 8).

During the Chapter 11 operation the debtor made certain other payments the trustee objects to. Among these were payments on John Schuyler's personal credit cards totalling $6,911.86 (trans. at 50, 51, 119, 127, 170; Exhibit 6). Mr. Schuyler also received $15,191.28 in salary and other payments (trans. at 59, 60; Exhibit 9). Further, Mr. Schuyler directed the payment of attorney fees in the amount of $1,386.00 although court permission for the payment had not been obtained as is required by 11 U.S.C. § 330(a) (trans. at 118, 119, 170).

On October 4, 1983, United Equipment and Progressive Container were converted to Chapter 7 cases. Mr. Robbins was appointed trustee. He visited United Equipment at about 9:00 A.M. on October 5, 1983. During that visit he discovered the undeposited checks meant for the tax escrow account (trans. at 26, 27; Exhibit 2).

Mr. Robbins has brought this action as trustee to recover damages for all the payments mentioned above, totalling $85,478.32. The trustee seeks to impose per-

sonal liability for this amount upon Mr. Schuyler on the theory that the defendant breached his fiduciary duty in violation of this Court's definitive orders. The opinion will address first whether personal liability may be imposed, upon the defendant, and then if so, what is measure of the damages.

The principle at issue here, the personal liability of a principal of a debtor in possession, derives from *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). Darrow, a trustee had permitted two trust employees to reap personal profits from their employment. The Supreme Court held that Darrow was liable to the trust for those profits, writing that, "The liability here is not created by a failure to detect defalcations, in which case negligence might be required to surcharge the trustee, but it is a case of a willful and deliberate setting up of an interest in employees adverse to that of the trust." 341 U.S. at 272, 71 S.Ct. at 682.

The Sixth Circuit has interpreted *Darrow* in *Ford Motor Credit Company v. Weaver*, 680 F.2d 451 (6th Cir.1982), as requiring that a trustee may be held personally liable only for acts which willfully and deliberately violate his fiduciary duty.[1] This is the same standard which would govern the liability of a principal of the debtor in possession. 680 F.2d at 462.

The Defendant denies that he willfully violated his fiduciary duties. Rather, he claims that he entrusted the entire management of the company to Faith Schuyler; he retired to the back room to make dumpsters and never learned of the failure to pay the taxes because she never told him and he never supervised her or asked her (trans. at 174–175, 189). Faith Schuyler corroborates his story. She has testified that she failed to pay the taxes and falsified the reports without John Schuyler's knowledge (trans. at 145–146). Faith does not know why she did not tell him; she supposes she should have but she would not have been able to pay the taxes anyway because there was no money (trans. at 140).

It appears that Mr. Schuyler's delegation of duties, if believed, might be sufficient to avoid liability under *Weaver*. The trustee has proven, and the defendant admits, a violation of the debtor-in-possession's fiduciary duty. The defendant maintains that it was a negligent violation at most, as he did not know of or commit the violation himself. Given that a violation has been admitted, the court must examine the credibility of Mr. Schuyler's denial of liability.

■ The following facts are pertinent to this examination. United Equipment was in serious trouble; its eventual conversion to Chapter 7 proves this. Faith Schuyler was about 20 or 21 years old at the time of these events (trans. at 153). Her prior business experience was one high school course covering bookkeeping, filing and secretarial work (trans. at 100), and four and half years as a waitress at a Mr. Burger restaurant. Soon after the Chapter 11 filing United Equipment's office staff of three was reduced to one, Faith Schuyler. The entire management of United Equipment then consisted of Faith Schuyler and John Schuyler. John Schuyler knew Faith had little training for her position (trans. at 165, 169) and concedes that he interviewed for a more skilled person to replace Faith at that time because he knew United Equipment faced tough times (trans. at 198–199). But he claims to have never supervised her work.

In essence, Mr. Schuyler's story is that he abdicated the entire management of his troubled business into the hands of a twenty year old former Mr. Burger waitress who had taken one business class while he retired to the back room and made dumpsters; he never asked Faith how the company was doing, nor checked the books. Although not an impossible story it is a highly implausible one. The court would have trouble believing it even if the witnesses propounding it were credible. But the court finds that John Schuyler and Faith Schuyler lack all credibility. Indeed,

---

1. The Ninth Circuit does not agree with the Sixth Circuit's interpretation of *Darrow*. See *Hall v. Perry (In re Cochise College Park)*, 703 F.2d 1339, 1357 n. 26 (9th Cir.1983).

their own testimony undermines their credibility.

Faith Schuyler's corroboration of John Schuyler's self-serving and implausible denial of liability is worthless. Faith Schuyler was John Schuyler's daughter-in-law. Further Faith has admitted that she had a "physical relationship" with John Schuyler prior to working for him and prior to marrying his son (trans. at 151). Although Faith has now divorced John's son she has not reverted to her maiden name of Boerkoel. Rather she retains Schuyler as her last name (trans. at 99). Ms. Schuyler is far from a disinterested witness.

Another factor undermining the credibility of John Schuyler and Faith Schuyler is their account of the whereabouts of the cancelled checks and bank statements of United Equipment. Without these all other records are useless and the trustee cannot determine whether there have been fraudulent or preferential transfers, nor verify the accounts (trans. at 18, 21). The trustee, Mr. Robbins, has testified that when he arrived on the morning of October 5, 1983, United Equipment's cancelled checks and bank statements were missing. He could not find them anywhere in the office (trans. at 21). When he asked Faith where they were she did not show him one cancelled check or bank statement; instead she replied "I don't know." Faith has testified that all the records were in the office that morning and that when Mr. Robbins asked for the checks she showed him boxes of checks on the left side of the storeroom (trans. at 124, 126). John Schuyler testified that no records were missing or stored elsewhere than the office on the date of United Equipment's conversion to Chapter 7.

Mr. Robbins is a far more credible witness. He has served as a trustee for four years and before that had extensive business experience. Without any other corroboration the court believes that the United Equipment cancelled checks and bank statements were not in the office on the morning of October 5, 1983. However, two witnesses do corroborate Mr. Robbins. Both Faith's mother, Jane Boerkoel, and Faith's brother-in-law, David Furniss, testified that at that time Faith was keeping those records at her parents' home for John Schuyler (trans. at 210, 220). The Schuylers' account of the missing checks does not shore up their credibility.

Lastly, Faith herself has undermined the central thesis of John Schuyler's defense. The defendant testified that he was never aware of the unpaid trade debt and has denied he was ever "hounded" for money by any creditor (trans. at 198, 299). Faith, however, testified that she decided what bills to pay unless there was a pressing bill where the creditor would call John Schuyler and the defendant would tell her to pay it (trans. at 153–154). Apparently, Mr. Schuyler took a more active interest in his corporation than he has admitted.

Considering all the testimony, the court comes to the inescapable conclusion that the evidence clearly and convincingly proves that John Schuyler knew all about the unpaid withholding taxes and the unpaid trade debt and that he now denies this knowledge in order to avoid liability. The court so finds, and further finds that such conduct and the failure to remedy the situation is a willful and deliberate violation of his fiduciary duty.[2]

The trustee has asked that the defendant be surcharged for the unpaid taxes, the trade debt, the payments on his credit cards, the attorney fees and the salary paid him. The estate is clearly entitled to be reimbursed for the unpaid taxes totalling $22,664.85. *In the Matter of Arbor Homes, Inc.*, 2 CBC 35, CCH Bankr.L.Rep. § 65,412 (Bankr.Conn.1974); *In the Matter of Happy Time Fashions, Inc.*, 7 B.R. 665 (Bankr.S.D.N.Y.1980). The estate is also entitled to compensation for the unpaid trade debt of $39,510.33 that accumulated after United Equipment became unable to pay its taxes. Such a surcharge is consistent with the rationale of *Arbor Homes* and

---

**2.** Given this factual determination which meets the *Weaver* standard this Court need not consider the trustee's arguments that it is not bound by *Weaver*.

*Happy Time.* It is also consistent with the holdings of *Sunshine v. Landwehr (In re Lewis G. Johnson, Inc.)*, 21 B.R. 186 (Bank.S.D.N.Y.1982) and *In re Avorn Dress Co., Inc.*, 79 F.2d 337 (2nd Cir.1935). In *Lewis G. Johnson* the court refused to grant a motion to dismiss a trustee's suit against the former officers of the debtor. The trustee sought to impose personal liability upon those officers for their failure to segregate and pay taxes and for the unpaid administrative expenses incurred as a result of their failure to inform the court of the true state of the corporation's finances. In *Avorn Dress* a creditor loaned the debtor money to meet its payroll in violation of the definitive order. Upon the debtor's bankruptcy the creditor sought priority over the other creditors by subrogating the payroll claims which have priority. The court refused. It held that by lending the money the creditor permitted the debtor to continue in business thereby depleting the estate and harming the other creditors. Had the court been informed that the debtor could not meet its payroll without borrowing funds the order of liquidation would have been entered earlier and the estate not depleted. 79 F.2d at 338.

As to the credit cards, the defendant admits that payments were made on his personal credit cards. The trustee is unable to determine whether those expenses were personal or business (trans. at 77–78). Mr. Schuyler asserts that all the expenses charged to those cards were business expenses incurred by United Equipment in the operation of its truck (trans. at 174–175). However, the defendant has offered only two statements disclosing charges of $123.00 and $186.00 worth of gasoline to substantiate this. When asked by the court why he could not produce more statements the defendant explained that as both he and his wife were on the cards it would take a signed notarized letter from both of them to authorize the credit card companies to search their records for copies of Mr. Schuyler's past bills. When the court observed that only Mr. Schuyler's name was on the statements, the following exchange took place:

Examination by the Court:

Q. Mr. Schuyler, only your name is on this, but your wife's name is on this, also?

A. I got the credit card with me now, Your Honor, same one, same number. It has her name on there.

Q. Let me see them.

A. These are all brand new ones, Your Honor, and they have only my name. But at one time we filed jointly. (trans. at 197.)

As Mr. Schuyler is the party best able to prove the nature of the charges and he has failed to produce copies of the statements despite ample time to obtain them before trial, the estate is entitled to compensation of the amount paid on Mr. Schuyler's credit cards less the $309.00 in business expenses he has proven, which results in a charge of $6,602.86.

The estate, however, is not entitled to compensation for the attorney fees paid. The payment of the attorney fees without court authorization does not appear to have been a deliberate violation of the defendant's fiduciary duty. Most debtors do not know they cannot pay their attorney fees without authorization unless their attorney tells them, and the debtor's attorney apparently failed to do so. Further the trustee can easily recover the payment from the attorney.

As to the salary paid Mr. Schuyler, the Supreme Court has written that "the prohibition is not merely against injuring the estate—it is against profiting out of the position of trust." *Mosser*, 341 U.S. at 273, 71 S.Ct. at 683. Mr. Schuyler abused his position of trust by keeping the debtor in existence, and drawing a salary, long after the debtor could no longer hope to pay its bills and taxes. As the Supreme Court has stated, Mr. Schuyler should not be permitted to profit from this abuse. Accordingly, he is surcharged $15,191.28 to compensate the estate for payments the debtor made to him.

The defendant shall pay to the trustee the sum of $83,969.36 as compensation to the debtor's estate for the unpaid taxes, unpaid trade debt, payments on the personal credit card, salary and other payments to Mr. Schuyler.

## ORDER

An Opinion concerning the trustee's action to impose a surcharge for breach of fiduciary duty having been rendered, therefore in accordance with said Opinion,

IT IS ORDERED that:

1. The Findings of Fact and Conclusions of Law set forth in the Opinion are incorporated by reference and made a part hereof.

2. Judgment shall enter for the trustee against the defendant in the sum of $83,-969.36.

3. A copy of this Order together with a copy of said Opinion shall be served upon William E. Rohn and Robert Hendricks, Attorneys for the Plaintiff, and Michael W. Sefton, Attorney for the Defendant, at their respective addresses of record herein.