**In re FREDERICK PETROLEUM CORPORATION, Debtor.**

**Bankruptcy No. 2–85–00741.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 17, 1987.

James S. Huggins, Marietta, Ohio, for SEOR, Inc., trustee.

Ward D. Coffman, Zanesville, Ohio, for Paul V. Jones, trustee.

Thomas E. Lodge, Thompson, Hine and Flory, Columbus, Ohio, for Glenda Exploration and Development Corp.

John P. Brody, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for The Benatty Corp.

E. James Hopple, Schottenstein, Zox & Dunn, Columbus, Ohio, for Official Unsecured Creditors' Committee.

Thomas R. Lloyd, Cambridge, Ohio, for debtor.

H. Jeffrey Schwartzberg, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for B & N Coal Co., Inc.

## ORDER DENYING FIRST AMENDED JOINT MOTION OF PAUL V. JONES, TRUSTEE FOR FREDERICK PETROLEUM, AND SEOR, INC., TRUSTEE, TO REPLACE OPERATOR, EMPLOY SEOR, INC., TRUSTEE, AS A NEW OPERATOR, FOR MODIFICATION OF THE JUNE 5, 1985 CASH COLLATERAL ORDER, AND JULY 24, 1986 AMENDMENT THERETO, FOR APPROVAL OF TRANSFERS OF PROPERTY UNDER 11 U.S.C. § 363(C)(1), AND FOR RELATED RELIEF

B.J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a First Amended Joint Motion ("the Motion") filed by Paul V. Jones, the duly-appointed trustee in this Chapter 11 case ("the Trustee"), and SEOR, Inc., Trustee ("SEOR"). The Motion, which was opposed by B & N Coal, Inc. ("B & N"), Glenda Exploration & Development Corporation ("GEDCO"), and The Benatty Corporation ("Benatty"), seeks to replace Benatty as the operator of certain of the debtor's oil and gas wells, to have this Court authorize the employment of SEOR as an operator of all the debtor's oil and gas properties and its pipeline, to modify the cash collateral order entered on June 5, 1985 and amended on July 24, 1986, and to obtain approval for contemplated future transfers of property of this estate without additional notice and opportunity for hearing. The Motion was heard by the Court in Zanesville, Ohio on February 20, 1987 and, on a continued basis, on March 12, 1987.

At the continued hearing on March 12th, Benatty represented to the Court that a settlement had been reached relating to the portion of the motion seeking Benatty's removal. Essentially, Benatty and SEOR will be parties to an agreement with the Trustee which will permit Benatty to resign as operator without admission that

any cause for removal may exist. That agreement also will include certain safeguards for the Trustee and the estate. Once that agreement has been executed, the Trustee will notice its terms to all appropriate parties, and upon its approval by the Court as required by Bankruptcy Rule 9019, SEOR and the Trustee will withdraw the portion of the Motion relating to Benatty's removal. Accordingly, that requested relief will not be considered by the Court at this time.

Matters remaining for determination by the Court include SEOR's qualification to act as operator for the pipeline and wells for which this debtor has operational rights; certain legal issues emanating from that employment request, including those raised by objectors B & N and GEDCO; the appropriateness of the provisions sought to be included as modifications of the existing cash collateral order, and the notice required for certain "farm-out" transfers of property of this estate. For reasons stated below, the Court finds that SEOR's employment under the presently proposed terms and the proposed procedure for future "farm-out" arrangements are inconsistent with the requirements of the Bankruptcy Code.

The terms of SEOR's proposed employment are embodied in a Pipeline and Well Operating Agreement (the "Agreement"). Highlights of the Agreement provide that, as an independent contractor, SEOR, on behalf of the Trustee, shall:

1. have the right to operate the debtor's pipeline and all wells in which the debtor has operational rights either by virtue of ownership or agreement;

2. determine in SEOR's own discretion, subject to industry standards, how SEOR will perform and what actions it will take with regard to the operations, with liability only for negligence or breach of the Agreement;

3. report periodically to the Trustee and the Court regarding its operations;

4. request the advice and consent of the Trustee for significant issues and actions which are out of the ordinary;

5. refrain from certain actions upon request of the Trustee;

6. analyze and determine the economic feasibility of efforts needed to place wells into production or to improve production of currently marginal wells or the pipeline with the discretion to undertake projects requiring expenditures up to $3000;

7. have no obligation to advance monies for remedial measures or otherwise effect the operation of particular wells unless SEOR feels such expenses are justified;

8. have no right to plug and abandon wells;

9. formulate, negotiate, implement, and receive a 5% commission fee for "farm-out" or other asset transfer arrangements, including solicitation of investment funds from third parties other than affiliates of SEOR, subject only to approval by the Trustee;

10. receive compensation, in addition to the "farm-out" brokerage fee, of $225 from the proceeds of each well operated for each month of operation and $0.04 for each mcf of gas transported through the pipeline pursuant to gas transportation agreements;

11. collect its expenses not included in the monthly fee from the current and future revenue of the associated well or the pipeline, or in the case of well expenses, if insufficient, from the current and future net revenue of other wells having common individual working interest owners or, if a well has negative net revenue, from non-debtor interests in that well or from the debtor's surplus from interests in other wells or pipeline revenues;

12. have the right to assert an administrative priority expense claim for compensable expenses in excess of

total gross revenues credited to the debtor;

13. forward $35 each month to the Trustee from the proceeds of each well SEOR operates in which the estate has an interest and which has available net revenues, after payment of operating expenses; payments to other producers selling gas through the pipeline; severance, compression, and personal property taxes; and SEOR's compensation;

14. obtain defined risk insurance and comply with applicable laws and regulations for wells actually operated;

15. collect, record and distribute proceeds from sales of gas and oil in a predetermined order with the right to negotiate and otherwise contract for such sales; and

16. subcontract to others, including affiliates of SEOR, any activities required for well or pipeline operation.

The objections to SEOR's employment relate not to its ability or experience in the area of well and pipeline operations which the Court finds were established by uncontested evidence, but rather challenge the appropriateness of SEOR's employment given its status in this case, question the scope of the Agreement's delegation of the Trustee's functions to SEOR, and argue for additional protections for the estate should SEOR's employment be authorized.

SEOR's role in this case is multi-faceted. As assignee of the pre-petition claim and lien position of Texas American Bank ("TAB"), SEOR apparently holds the largest secured claim against this estate. The asserted security for its claim includes mortgages and security interests against various well and lease interests, pipelines, production royalties, equipment, fixtures, and other property of the estate. SEOR's lien claim also includes a purported interest in all production generated from the debtor's wells on and after December 1, 1986. Examination of SEOR's total claim, asserted in a principal amount of $6,350,196.89 as of March 15, 1985, and comparison of that amount claimed with the estimated value of $500,000 ascribed to the properties against which its liens relate, compel a finding that SEOR holds a substantial unsecured claim against this estate. Although the amount SEOR paid TAB for the assignment of its claim is not known, SEOR has conceded that the purchase price was deeply discounted from the face amount of the claim. SEOR also has expressed potential interest in proposing a plan of reorganization, if in its discretion, its operations of the estate properties indicate that acquisition of this company would be economically justified.

The Court also notes that this Chapter 11 case has been pending since March 15, 1985, a date now two years past. Although an operating Trustee was appointed on May 29, 1985, it is generally agreed that the Trustee is not experienced in oil and gas matters, and that he has not been able to generate unliened cash for development of the debtor's assets or expansion of its operations. Nor has he been able to locate an entity with a present interest in acquiring the debtor or otherwise proposing a plan of reorganization. Moreover, while the estate apparently has potential causes of action relating to transfers to and from insiders, there are many title inconsistencies clouding the estate's ownership of the various working interests in oil and gas leases which serve as the basis for the debtor's drilling and well operations.

The objectors first assert that SEOR is required to qualify as a "professional person" as that term is used in 11 U.S.C. § 327 before it can be employed as operator. The objectors contend that the scope of SEOR's responsibilities under the Agreement makes its function that of a professional person. Since SEOR, as a secured creditor and potential plan proponent, has an interest adverse to the estate and is an "interested person" within the proscription of § 327(a), which is not excepted from that requirement by § 327(c), B & N and GEDCO maintain that SEOR cannot be appointed under the terms of the Agreement.

■ Section 327(a) of the Bankruptcy Code sets forth requirements for the em-

ployment of "professional persons" as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ ... other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

"Disinterested person," as specifically defined by 11 U.S.C. § 101(13)(A), is "a person that—is not a creditor". Therefore, it is clear that SEOR, as the holder of secured and unsecured claims against this estate, cannot so qualify. Furthermore, to the extent the values of the debtor's properties subject to SEOR's asserted liens increase as a result of SEOR's operations of debtor's pipeline and wells, those increased values, as of the effective date of the confirmation of any plan of reorganization, may accrue to the benefit of SEOR's secured claim rather than to the benefit of the estate. Realistically, should SEOR's lien position be unassailable, it is hard to see how the most proficient operations could result in direct benefit to unsecured creditors of this estate given the exceedingly large disparity between SEOR's total claim and the present estimated value of the debtor's assets.

Another matter which causes this Court to scrutinize strictly the proposed appointment is the potentially chilling effect such appointment may have upon the Trustee's ability to exercise independent judgment regarding the appropriateness or feasibility of challenging SEOR's lien position once SEOR is employed as the "operating arm" and vested with substantial discretion in the utilization and development of the debtor's resources. Although no such indication has been presented to the Court, the proposed appointment also presents opportunity for SEOR to direct the debtor's operations in a manner which best benefits those liens.

On the other hand, to the extent improved operations increase production of the wells, there will be benefits to other parties in interest such as landowners, royalty and working interest owners. If production is greatly increased, it also follows that any potential plan proponent may be forced or be willing to increase its bid for the debtor's assets. As a practical matter, any such augmented price would be expected to result in a higher dividend for unsecured creditors, and thereby can be seen as a benefit to the estate.

Apart from those matters, and recognizing that SEOR cannot qualify for appointment by this Court as a professional person, the Court must determine if SEOR falls within that definition such that § 327(a) prohibits its employment. Should the Court decide that SEOR is not a professional person under the Agreement as proposed, the issue remains as to whether its obvious adverse interests and multiple positions in this case nevertheless make its appointment inadvisable or inappropriate.

Although "professional person" is not defined by the Bankruptcy Code, the scope of that term has been discussed in a number of cases. Persons who offer services normally performed by professionals, such as appraisers or management consultants, have been designated as professionals, while persons who are involved in the mechanics of a debtor's business have been found not to be within that category of persons. *In re Carolina Sales Corp.*, 45 B.R. 750 (Bankr.E.D.N.C.1985); *U.S. ex rel. Kraft v. Aetna Casualty & Surety Co.*, 43 B.R. 119 (M.D.Tenn.1984). Factors considered by the courts involve not only the nature of the services performed, but also the effect of such person's services upon the administration of the bankruptcy case, and how central that role is to the reorganization proceedings. *In the Matter of Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr.S.D.N.Y.1981); *In re Johns-Manville Corp.*, 60 B.R. 612, (Bankr.S.D.N.Y. 1986). If the person seeking to be appointed as a trustee's agent actually impacts upon the administration of the debtor's estate, that person may be a professional person regardless of the label given to its function. *Johns-Manville*, 60 B.R. at 620.

■ This Court believes that a person may perform activities which make its function that of a professional even if the chosen area of work is not widely so recognized. The distinction relates to the degree of autonomy within which the person will operate and the degree of supervision or direction required by the debtor-in-possession or trustee. Essentially, the proscription against appointment of an interested person is to prevent placing such a person in a sufficiently autonomous position such that discretion exists for implementation of activities of benefit to the adverse interest. The appointment criteria for persons outside the employee or agency exception of § 327(c) do not require the Court to determine whether the particular person seeking to be appointed will, as a matter of fact, use the position to harm the estate, but rather are intended to prevent that issue from arising by prohibiting the initial appointment if the person is to function autonomously at a certain level of decision-making, but lacks necessary insulation from inappropriate pressures.

■ Applying the cited factors to this situation, the Court finds that SEOR is a professional person under the terms of the Agreement as presently proposed. The specific authorized activities which compel that result are: (1) SEOR's complete discretion regarding selection and timing of wells which it will operate based upon its economic analysis, whether by appraisal or observation of historical production records; (2) SEOR's independent ability to negotiate, execute and cancel gas transportation agreements and oil or gas sales contracts; (3) SEOR's authority to advance monies limited in amount only on a single expenditure basis, for non-emergency remedial and reconditioning operations or pipeline extensions, which advances, in certain instances, may become administrative expenses; (4) SEOR's complete financial management authority, including collection, disbursement, and accounting of funds of the estate as well as escrowing of disputed funds, with only a summary of that report required to be sent to the Trustee; and (5) SEOR's entitlement to a 5% "broker's fee" for transfers of estate prop-

erties. Although the Court does not believe that granting one of those rights to an operator, without more, necessarily means that operator becomes a professional person, the aggregation of such delegated rights in the Agreement between SEOR and the Trustee makes SEOR a professional person in this instance. Accordingly, this finding that SEOR is a professional person under the terms of its proposed employment means that it cannot be appointed under the provisions of 11 U.S.C. § 327(a).

■ Objections to SEOR's appointment also relate to the extent the Agreement contemplates delegation to SEOR of duties which must be performed or controlled by the Trustee. To some extent the "delegation" and "professional person" arguments overlap because, as delegation of the Trustee's duties to SEOR increases, so does the probability that SEOR is a professional person. Accordingly, the Court finds that it is inappropriate to delegate activities or decisions which the Trustee is required to perform or which touch upon the Trustee's fiduciary burdens without retention of the ultimate decision-making power in the Trustee, unless the delegatee is required to meet the more stringent standards of 11 U.S.C. § 327(a). This finding recognizes the interrelationship of the professional person designation to the delegation issue. In this situation the two issues are but different sides of the same question.

■ The Agreement's proposal to delegate to SEOR the right to enter into "farm-outs" arrangements, recompletions or other activities which may require solicitation of funds from unrelated third parties raises additional concerns. Such arrangements are expected to require assignments to investors of all or part of the debtor's working interests in various oil and gas leases. Although the most recent amendments to the Agreement call for the Trustee to approve such arrangements, it is contemplated that SEOR's duties will include determination of the amount and type of investment sought, designation of the well and portion of the lease interest to be as-

signed, selection of the investors and negotiation of all terms of those arrangements. It is further contemplated that such transfers will occur without notice to other parties in this case.

■ The Court finds that the proposed assignments are transfers of the estate's property by sale, and as such, come within the requirements of 11 U.S.C. § 363. Regardless of whether such transfers are in the ordinary course of business or are extraordinary transfers, 11 U.S.C. § 363 grants the right to such usage and sale only to the Trustee. While execution of "farm-out" or other development arrangements may properly be vested in an agent such as SEOR, the initial decision to undertake such activities and the terms and conditions for transfers must be properly within the decisionmaking authority of the Trustee.

■ SEOR argues that notice and an opportunity for hearing need only be given for extraordinary transfers which are out of the ordinary course of the debtor's business and that the contemplated assignments are ordinary transactions. The Court, however, believes that such test is not the determinative issue in this case. Although characterizing such activities as either ordinary or extraordinary transactions is unclear in this case, where such activities are being formulated and carried out by an interested agent of the Trustee who also has potential or existing adverse interests, this Court will require notice and an opportunity for hearing prior to authorization. That procedural requirement will be imposed even if subsequent revisions to the Agreement take SEOR out of the category of a professional person. As proposed, the Court finds that vesting authority in SEOR for all decisions relating to the farm-out activities and other contemplated transfers, without requirement for notice and opportunity for hearing, is an impermissible delegation of the Trustee's duties and decisionmaking authority which is not in compliance with the requirements of § 363.

■ Finally, B & N and GEDCO's objections relate to specific provisions of the Agreement which, regardless of the outcome of the professional person or delegation issues, appear to inadequately protect the estate or prematurely determine disputed issues in SEOR's favor. After review of those provisions, the Court finds the objections to be valid insofar as they relate to any indication that SEOR may be unbonded in its operations, confirmed in its lien position, free to subcontract activities to its affiliates without prior approval by the Trustee if fees for such services are not included in SEOR's compensation, insufficiently insured to protect the estate, or able to direct that monies paid to the Trustee are for his compensation rather than income to the estate.

Based upon the foregoing, the Court finds that the First Amended Joint Motion of the Trustee and SEOR must be, and the same is, hereby DENIED. SEOR and the Trustee are, however, given a 20–day period within which to submit a further amended motion designed to address satisfactorily the Court's concerns. Any such motion should be served upon B & N, GEDCO, The Benatty Corporation, and E. James Hopple, attorney for the official unsecured creditors' committee. Absent unusual circumstances, however, opposition to such further amended motion will be addressed and ruled upon by the Court without further hearing. Consistent with these findings, proposed changes to the cash collateral order of June 5, 1985 are also DENIED at this time.

IT IS SO ORDERED.