**In re LOWRY GRAPHICS, INC., Debtor.**

**Bankruptcy No. 85–05903–H3–7.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

April 27, 1988.

---

Rosemary E. Williams, Houston, Tex., for debtor.

Daniel Goforth, Sewell & Riggs, Houston, Tex., for trustee.

Marcy E. Kurtz, Bracewell & Patterson and Michael A. Rosenthal, Rosenthal & Rosenthal, Houston, Tex., for Jack M. Webb.

Gary J. Knostman, Fulton Beach, Tex., trustee (successor).

Frank G. Waltermire, Houston, Tex., for William O. Turney.

## MEMORANDUM AND ORDER

LETITIA Z. CLARK, Bankruptcy Judge.

The issue in this case is whether there has been a breach of fiduciary obligation by a Chapter 11 trustee.

A Show Cause Order was issued in this case based upon the Report of the Special Counsel. Hearing was held February 1, 1988 and February 19, 1988.

Jack M. Webb was appointed Trustee in this case on November 21, 1985 by the Miscellaneous Judge. There had been no motion upon notice and hearing for appointment of a trustee, as required by 11 U.S.C. § 1104(a) and Local Bankruptcy Rule 9007. The case was converted to a Chapter 7 proceeding on December 12, 1986. Webb remained as Trustee after the conversion, but moved to resign on August 14, 1987. The successor Trustee was chosen at random from the Chapter 7 panel.

The successor Trustee, during the show cause hearing, raised questions regarding Webb's disbursement of estate funds, self-dealing or permitting his agent to self-deal, and delegating duties without prior notice to creditors or court approval where notice should have been given and court approval sought. Webb takes the position that he did nothing wrong, and that if he did, he wants to seek *nunc pro tunc* approval for his prior acts in question.

■ The duties of a Chapter 11 trustee are stated at 11 U.S.C. § 1106. They include the obligation to "investigate ... the financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business." The trustee is a fiduciary. *Wolf v. Weinstein*, 372 U.S. 633, 650, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963);[1] *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 355–56, 105 S.Ct. 1986, 1994–

95, 85 L.Ed.2d 372 (1985); *In re Grodel Manufacturing, Inc.*, 33 B.R. 693 (Bankr. D.Conn.1983). The trustee is charged with the duty of acting as the chief executive officer of a corporate debtor. I. Sulmeyer, D. Lynn & L. King, *Collier Handbook for Trustees and Debtors-in-Possession*, 10–28 (1985). *See also Commodity Futures Trading Com'n v. Weintraub, supra*, 105 S.Ct. at 1993. He is also to "file the list, schedule, and statement required under Section 521(a) of this title," 11 U.S.C. § 1106(a)(2); and to prepare monthly operating reports. Local Bankruptcy Rule 2015. He may not deal on his own behalf with property of the bankruptcy estate, 18 U.S.C. § 154, nor permit his agents and/or employees to do so. *Mosser v. Darrow*, 341 U.S. 267, 271–72, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951); *Donovan & Schuenke v. Sampsell*, 226 F.2d 804, 812 (9th Cir.1955).

■ The trustee has considerable scope within which to exercise his business judgment in running the business, without prior notice to creditors or leave of court. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). However, this scope does not include leave to delegate virtually all of his chief executive officer duties, or any of his specific duties as a representative of the court, without prior notice to creditors and without leave of court. *See, e.g., Mosser v. Darrow, supra*, 341 U.S. at 273–75, 71 S.Ct. at 683–84; *In re Frederick Petroleum*, 75 B.R. 774, 780 (Bankr.E.D.Ohio 1987).

■ In a Chapter 11 case, the trustee is chosen by the court for his or her particular capabilities. If the trustee delegates his duties without notice to the court and the creditors that he serves, he has usurped the court's power and duty to choose the identity and qualifications of the trustee.[2]

---

1. Bankruptcy cases filed before October 1, 1979 were decided under the Bankruptcy Act. Cases filed thereafter were decided under the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978) (codified as amended at 11 U.S.C. § 101, *et seq.*). Where Act cases are cited herein, the principles stated therein regarding duties of fiduciaries remain applicable under the Code.

2. Upon full implementation of the U.S. Trustee system addressed at 11 U.S.C. § 1104, *as amended by* Act of October 27, 1986, Pub.L. No. 99–554, Title II, Subtitle A, § 222, this choice will no longer rest with the court, but with the U.S. Trustee, upon approval by the court. However, the principle remains the same. The case trust-

Webb delegated to two individuals, Bill Turney and Arie Ter Poorten, numerous trustee duties without first notifying the court and creditors of this delegation or seeking prior leave of court.[3] It was Turney, not Webb, who represented the estate at the meeting of creditors held pursuant to 11 U.S.C. § 341. Transcript of February 19, 1988 hearing, p. 103. (Hereinafter "Tr. Feb. __, p. __"). It was Turney, not Webb, who decided in January, 1986 that the business should not continue operating, following loss of a Corps of Engineers contract in December of 1985. Tr. Feb. 19, p. 18. Ter Poorten, not Webb, had day to day responsibility for inventory control, accounts receivable, personnel, and tax matters, and was responsible for opening and closing the business each day. Tr. Feb. 1, p. 16, and effectively prepared the operating reports. Tr. Feb. 19, pp. 127–28. The Trustee's counsel's fee applications, of which the Court takes judicial notice, state that Turney and Ter Poorten conferred on numerous occasions with the Trustee's Bankruptcy attorneys. See itemized Fee Applications of Trustee's counsel, Docket Entries # 41, # 52, and # 68. *See also*, Tr. Feb. 19, pp. 119–120.

Webb and Turney both testified that, in spite of these facts, Turney and Ter Poorten had merely advisory roles in assisting the Trustee in running the business and investigating and reporting to the court the financial affairs of the company. The court finds neither Webb nor Turney credible witnesses.

During the period in which Webb was the Chapter 11 trustee in this case, he was also the Chapter 11 trustee on at least twenty other cases. It is doubtful whether one man can actually, competently, serve as the chief executive officer of twenty or more operating companies.[4] Such an individual might contemplate extensive delegations of his duties. Where authorization for delegations is unclear, "[t]he practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment." *Mosser v. Darrow, supra,* 341 U.S. at 274, 71 S.Ct. at 683. The Court further noted:

> A further remedy of a trustee for limiting, if not avoiding, personal liability is to account at prompt intervals, which puts upon objectors the burden of raising their objections.

*Id.* at 274–75, 71 S.Ct. at 683–84. But Webb did not in this case notify the court or the Debtor's creditors in advance of his intention to employ a chief executive officer other than himself, or to delegate other trustee duties, nor did he do so after the fact by prompt and informative accounting.[5]

▮ The court finds that Webb did not act as the chief executive officer of Lowry Graphics during the period in which he was the Chapter 11 Trustee responsible for Lowry Graphics. Webb has argued that his extensive delegation of his duties is permissible under the Code without leave of court in light of 11 U.S.C. § 327, "Employment of Professional Persons." The Court is not persuaded by this argument.

Section (a) of 11 U.S.C. § 327, entitled "Employment of Professional Persons" states:

ee is to have been chosen for his particular qualifications.

3. These individuals worked with Webb on a number of bankruptcy estates. Transcript of Feb. 19, 1988 hearing, pp. 41, 55.

4. The Court takes judicial notice of the presence of the Report of the Special Counsel in the file of this case. The Court takes judicial notice of the presence on the docket of this District, of the twenty-six cases therein discussed. *See* Graham, *Handbook of Federal Evidence,* 201.3, pp. 72–73 (2nd ed. 1986). In each case Webb was appointed and accepted appointment as Chapter 11 Trustee. All but five of these appointments were made in 1984 or 1985. Webb continued as Chapter 11 Trustee throughout 1985 on the 1984 appointments. The Special Counsel's Report is not a complete list of all cases in which Webb was appointed Chapter 11 trustee. *See, e.g.,* Affidavit of Administrative Office Auditors, May 20, 1987, Docket No. 77.

5. Operating reports were filed, and are admitted in evidence herein, but none provide information from which one could ascertain, or even infer, the extensive use of delegates that was present in this operation.

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Subsection (b) of 11 U.S.C. § 327 provides a partial exception to the requirement of Subsection (a):

If the trustee is authorized to operate the business of the debtor under Section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of the business.

■ Simply stated, where a company has previously had on its payroll, and under some circumstances, on retainer,[6] certain employees generally regarded as professionals, such as Certified Public Accountants and attorneys, such a company need not seek specific authorization from the court to continue with its regular operations and employees, following the filing of a Chapter 11 proceeding.

The Bankruptcy Code does not define the term "professional person," although the Code does define the word "person" to include partnerships and corporations. 11 U.S.C. § 101(35). However, numerous courts grappling with the term have formulated a working definition. One of the first and most often cited definitions is that given by the bankruptcy court in *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr.S.D.N.Y.1981). In holding that maritime engineers employed by the debtor were not "professional persons," the court stated:

For the purposes of section 327(a), "professional person" is limited to persons in those occupations which play a central role in the administration of the debtor proceeding. Court approval is required for the retention of attorneys, account-

ants, appraisers, auctioneers and persons in other professions intimately involved in the administration of the debtor's estate.

■ Under this formulation, a person will be determined to be a "professional" from an examination of the relation of the services performed to the administration of the case, rather than from an examination of the type of services rendered by that person. In other words, any entity may be a professional person if its services intimately involve the administration of the bankruptcy estate. *Accord, United States ex rel. Kraft v. Aetna Casualty & Surety Co.*, 43 B.R. 119 (M.D.Tenn.1984); *In re Schatz Federal Bearings Co.*, 17 B.R. 780 (Bankr.S.D.N.Y.1982).

Webb argues that Turney and Ter Poorten are not professionals, and that leave of court to employ them is thus not required, or in the alternative, that if they are professionals, they are merely replacements of personnel who were fired by the Trustee, and that application to the court is thus excused pursuant to 11 U.S.C. § 327(b). Under the *Seatrain* definition, however, both Turney and Ter Poorten, in the exercise of the duties the Trustee delegated to them, including preparation of the operating reports, the making of the decision to close down operations, responsibility for all inventory, accounts receivable, personnel, tax matters, and representation of the estate at the creditors' meeting, were exercising duties integral to the administration of the case. Accordingly, application should have been made to the Court for authority to employ both Turney and Ter Poorten.

Subsection 327(b) provides no exception for this unauthorized delegation. Turney was effectively the chief executive officer during the company's short operating life after the appointment of Webb. This was *Webb's* personal duty, and Subsection (b) does not authorize him to replace *himself* as chief executive officer without court authority. *See also* 11 U.S.C. § 1108. In addition, as to both Turney and Ter Poorten, since both performed trustee duties,

---

6. *See, e.g., In re Johns–Manville,* 60 B.R. 612 (Bankr.S.D.N.Y.1986).

they cannot be regarded as having merely replaced some prior functionary. Ter Poorten, for instance, cannot be said to have been merely the replacement for a previous company treasurer, since he exercised various trustee duties in administration of this bankruptcy estate.

The question of the extent to which a Chapter 11 trustee may delegate his duties has been addressed in *In re Frederick Petroleum Corp., supra.* In *Frederick Petroleum,* the court was asked to pass on the propriety of an agreement between a chapter 11 trustee and a creditor, SEOR, Inc., that gave SEOR considerable authority in running a portion of the debtor's oil and gas operations. The agreement was attacked by other creditors, who alleged that SEOR was a "professional person" pursuant to Section 327(a), and therefore must meet that Section's standard of "disinterestedness." In finding that SEOR was subject to the requirements of Section 327, the court stated at p. 780:

> ... as delegation of the trustee's duties to SEOR increases, so does the probability that SEOR is a professional person. Accordingly, the court finds that it is inappropriate to delegate activities or decisions which the trustee is required to perform or which touch upon the trustee's fiduciary burdens without retention of the ultimate decision making power in the trustee, unless the delegatee is required to meet the more stringent standards of 11 U.S.C. 327(a). This finding recognizes the interrelationship of the professional person designation to the delegation issue. In this situation the two issues are but different sides of the same question.

**7.** The court notes in passing that the record reflects that this is not the first instance in which questions of impropriety have been raised regarding the handling of vehicles which are property of estates of which Webb was Trustee in bankruptcy and Turney an active "delegate" of the Trustee. The Special Counsel's Report at pp. 31–32 discusses a transaction in which the Special Counsel concluded that Webb as Trustee permitted a secured creditor to regain most of its collateral, provided that the secured creditor did not repossess a Mercedes–Benz which became property of Mr. Turney as part of his payment for his services to the estate.

The *Frederick Petroleum* court held that a primary purpose of Section 327(a) is to prevent abuse of the bankruptcy estate that may result from placing persons pursuing their own interests in autonomous positions over the estate. *Id.* at 780. Additionally, the *Frederick Petroleum* court found that any person with substantial authority over the debtor's operations will likely strongly influence the administration of the case. *Id.* at 779.

Abuse of the sort contemplated in *In re Frederick Petroleum, supra,* appears to have occurred, in fact, in connection with Turney's purchase of one of the Debtor's delivery trucks. On February 18, 1986, Turney signed an estate check in the amount of $962.45 payable to G.M.A.C., the secured lender on a Mitsubishi pickup truck. Successor Trustee's Exhibit 9(e). Turney testified that this check paid off Lowry Graphics' debt on the truck in full. Tr. Feb. 19, 1988, p. 70. Turney took possession of the truck in February or early March of 1986, and used it for personal and business purposes until he traded it in June of 1986. Tr. Feb. 19, p. 71–72. Not until July 28, 1986 did Bedford Management, a company wholly owned by Turney, Tr. Feb. 19, p. 71, make a payment of $1,000.00 to the estate for the truck. Tr. Feb. 19, 1988, p. 32. However, the evidence shows that the decision to cease the Debtor's operations was made in January of 1986, well before the final payment of $962.45 to G.M.A.C. was made. Tr. Feb. 19, p. 18, and Successor Trustee's Ex. 9e. It therefore appears that the Debtor, on Turney's signature, purchased this vehicle solely for the purpose of passing it on to Turney.[7]

*In re Cherokee Supply, Inc.,* Bankruptcy Case No. 86–03126 (Bankr.S.D.Tex.1986). In addition, there is pending before this court an adversary proceeding in which one Stephen Marsh alleges that Webb and Turney authorized a forcible repossession on behalf of an estate, of a Lamberghini to which he claims title, from his home while he was present and objecting, and that Mr. Turney has driven the vehicle for his own use. According to the pleadings, the vehicle remains in the custody of Webb. *Marsh v. Webb,* Bankruptcy Adversary No. 86–1088 (Bankr.S.D.Tex.1986).

As an agent of the Trustee, Turney is held to the same fiduciary standard as the Trustee. Regardless of whether Webb or Turney in fact profited from this transaction at the expense of the estate, neither a bankruptcy trustee nor his agents may purchase or self deal in assets of the estate, even for a "fair" price. *Mosser v. Darrow, supra*, 341 U.S. at 271–72, 71 S.Ct. at 682; *In re Donovan & Schuenke v. Sampsell*, 226 F.2d 804, 812 (9th Cir.1955). *See also In re Grodel Manufacturing, Inc.*, 33 B.R. 693, 694–95 (Bankr.D.Conn.1983); *In re Exennium*, 23 B.R. 782 (Bankr. 9th Cir.1982). In *Donovan & Schuenke v. Sampsell, supra*, a sale of real property of the debtor was made to an individual who had served as an officer of debtor during bankruptcy, and then resigned before the sale. The Ninth Circuit set aside the sale, stating:

> It is elementary that a fiduciary cannot deal or receive a transfer of the property which is the subject of the trust. It makes no difference whether the fiduciary be called an agent, custodian, trustee or officer. It makes no difference whether it can be proved that the fiduciary profited by the transaction. The principle is established by general law and does not depend upon the existence of a statute for enforcement. To affirm [such a] sale would seem to place a premium on shady dealings in a court of bankruptcy.

*Id.* at 812.

The truck transaction is improper. The appropriate measure of recompense to the estate by the Trustee is discussed *infra* at pp. 80–81. The appropriate measure of reimbursement to the Debtor's estate where the Trustee has delegated duties which, in the absence of prior court approval, he himself must perform, is discussed below.

A Chapter 11 trustee's compensation cannot exceed the maximum limits established by 11 U.S.C. § 326. The statutory scheme imposes a limit on the amount of compensation that may be granted for performance of a trustee's duties, whether or not a particular duty was actually performed by the trustee or delegated to another. If the duty performed by such a delegate is one statutorily imposed upon the trustee and is one that may be performed by someone other than the trustee without prior court approval, then that person may not be paid independently of the trustee's fees. *In re Impact Publications, Inc.*, 24 B.R. 980, 982 (Bankr.N.D.Tex. 1982); *In re Wildman*, 72 B.R. 700 (N.D. Ill.1987). *See Also Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981). In other words, if the trustee is awarded the maximum amount pursuant to 11 U.S. C. § 326, the delegate's compensation must be subtracted from that amount. In the case at bar, the Trustee received the maximum authorized pursuant to 11 U.S.C. § 326, and the evidence shows that Turney and Ter Poorten in fact performed duties that are imposed upon the Trustee under the Code, yet were paid directly from estate funds totals of $3,280.00 as to Turney's services, and $6,725.00 as to Ter Poorten's services, without court knowledge or approval. In essence, the estate has been charged twice, once by Webb and the second time by his delegates. Clearly, such a practice violates Section 326 by allowing greater compensation for the performance of Trustee's duties than is permitted under that Section.

By contrast, the measure of reimbursement is somewhat difficult to determine in an instance involving sale of estate property, such as a truck which has subsequently been traded to a dealer, where the property is difficult to trace. Indeed, the Supreme Court has commented on the potential difficulty of determining trustee reimbursements to estates and the concomitant desirability of scrupulous trustee behavior, noting:

> [E]quity has sought to limit difficult and delicate fact-finding tasks concerning its own trustee by precluding such transactions for the reason that their effect is often difficult to trace, and the prohibition is not merely against injuring the estate—it is against profiting out of the position of trust.

*Mosser v. Darrow, supra,* 341 U.S. at 273, 71 S.Ct. at 683. The cases which have addressed the problem of sale or misuse of estate property by a fiduciary or his delegate have either voided the transaction, *Donovan & Scheunke, supra* (voiding sale of real property), assessed the trustee with the measure of profit enjoyed by his delegate, regardless of whether the trustee shared in that profit personally (*Mosser v. Darrow, supra* ), or assessed the trustee with the amount of diminution of the estate. *See Matter of Happy Time Fashions,* 7 B.R. 665 (Bankr.S.D.N.Y.1980); *In re United Equipment Sales Co.,* 47 B.R. 818 (Bankr.W.D.Mich.1985).

■ Turney claims that the "blue book" value of a 1984 Mitsubishi pick-up truck when he "bought" it from the estate, was $2,400.00 to $2,500.00, but that this vehicle was worth less than that because it required "reconditioning." Tr. Feb. 19, p. 66. No more useful evidence was introduced on the subject of value of the vehicle. No repair bills or receipts were introduced. Taking the average of the estimate of value given by Turney at $2,450.00, and comparing this to the $1,000.00 that he paid five months late to the estate for the truck (through his wholly owned Bedford Management), the diminution to the estate (and profit to Turney) was $1,450.00, exclusive of interest. No credibility is given to the uncorroborated statements of Turney that this truck was less valuable than the "average" 1984 Mitsubishi pick-up in February or March of 1986. Accordingly, as to the truck, Webb is to reimburse the estate $1,450.00, payable in the form of cashier's check or certified check to the order of Gary Knostman, Trustee, within ten (10) days of entry of this Order.[8]

As to payments made by the estate to Turney and Ter Poorten, Webb argues that the services they performed were useful to creditors and were reasonably compensated. He seeks opportunity to apply for *nunc pro tunc* relief if these payments are found to have been unauthorized.

Since Webb has not to date filed a motion seeking *nunc pro tunc* approval of his retention of Turney and Ter Poorten, this court need not address here whether there are any equities in this case sufficient to rise to the "exceptional circumstances" justifying such relief, as contemplated in *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280, 1289 (5th Cir.1983). Upon proper motion and notice, the court will consider such relief. Absent the filing of such motion within ten (10) days of date of entry of this Order, the payments to Turney (whether paid to Turney or to Bedford Management for his services) and Ter Poorten are deemed to have been payments for duties of the Trustee, and the services of Turney and Ter Poorten to have been services which the Trustee was to have performed. Accordingly, absent the filing of such motion, those monies are to be reimbursed to the estate by Jack Webb, Trustee, in the amounts of $3,280.00 as to Turney and $6,725.00 as to Ter Poorten, payable in the form of cashier's check or certified check to the order of Gary Knostman, Trustee, within fifteen (15) days of date of entry of this Order.

It is so Ordered.

---

**8.** Another delivery truck was sold from the estate for about $1,000.00 to another employee used by Webb on several bankruptcy estates, Allen Legrow, around February, 1986. This sale is also improper. However, there is insufficient evidence to determine the value of that truck as of February, 1986. Tr. Feb. 19, pp. 63, 75–76.