In the Matter of PLATINUM POWER COMPANY, INC., Debtor.

Bankruptcy No. 688–01200.

United States Bankruptcy Court, N.D. Ohio.

Aug. 2, 1989.

Wylan W. Witte, Alliance, Ohio, for debtor.

Mary Ann Rackoff, Staff Atty., Akron, Ohio, for the office of the United States Trustee.

MEMORANDUM OF DECISION RE: RETENTION OF COUNSEL NUNC PRO TUNC AND ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

JAMES H. WILLIAMS, Chief Judge.

## PROCEDURAL HISTORY

The debtor, Platinum Power Company, Inc. (Platinum Power), filed for relief under Chapter 11 of Title 11 of the United States Code on August 24, 1988. Its counsel of record, according to the petition, was Norman L. Sirak. On November 2, 1988, the debtor filed an application for authority to employ Wylan W. Witte as its counsel in proceedings before this court. The application disclosed that $2,500.00 had been paid to Mr. Witte and his affidavit as to his disinterestedness accompanied the application. On November 17, 1988, the court's order authorizing Mr. Witte's appointment as attorney for the debtor in possession was entered.

Less than a month later, on December 14, 1988, the United States Trustee (UST) sought conversion or dismissal of the case pursuant to 11 U.S.C. § 1112(b). The movant suggested that such shortcomings as failure to secure insurance, failure to escrow payroll taxes for employees and the employer's share of such taxes, failure to pay current administrative expenses and issuing checks for which there were insufficient funds evidenced an inability to effect a plan of reorganization. Following a hearing, the court granted the UST's motion.

The order converting the case was filed on February 1, 1989 and the case has since proceeded as a Chapter 7 liquidation matter.

Mr. Witte filed an application for final allowance of compensation and reimbursement of expenses on March 15, 1989. Concluding a narrative summary of his efforts on behalf of the debtor in possession, he requested compensation in the amount of $3,409.75 (based on 29.6 hours of professional time expended at the rate of $115.00 per hour) less the $2,500.00 previously paid to him by the debtor, and reimbursement of expenses in the amount of $86.15.

Attached to the narrative statement is a detailed, chronological listing of Mr. Witte's services and the expenses he claims to have incurred on the debtor in possession's behalf. The first entry was made on October 7, 1988. Between that date and November 2, 1988 on which the debtor's application for authority to employ Mr. Witte was filed, his records list 18.1 hours of professional services rendered for which $2,081.50 is charged, and $69.40 in expenses advanced.

The UST appeared at the hearing on Mr. Witte's application and pointed out the lapse of time between the commencement of the applicant's services and his appointment to serve as counsel for the debtor in possession. Mr. Witte next filed a "Motion for Order to Amend Order Authorizing Employment of Counsel to Make Retention Effective Nunc Pro Tunc" to which the UST has further objected.

## DISCUSSION

Of course, this court has previously visited the issue of compensation of professionals who, for a variety of reasons, have performed services without having first been appointed to their roles in the fashion prescribed by 11 U.S.C. § 327. *See, In re Mansfield Tire & Rubber Company*, 65 B.R. 446 (Bankr.N.D.Ohio 1986)[1] As the UST accurately observes, this court noted, at page 465 of its opinion in *Mansfield* that

> [t]he overwhelming weight of authority seems to be to the effect that professional services performed for a bankruptcy estate are compensable out of the assets of the estate *only* if such professional assistance has been authorized by the court prior to the services being rendered. (Citations omitted; emphasis in the original.)

With a remembered sense of relief, we evaded the issue presented by the application for a *nunc pro tunc* appointment because no such request was before the court.

> We need not struggle with that issue for there is no motion before the court to effect such an appointment, unless the trustee's application on behalf of these claimants "for attorney's fees as an administrative expense" can be so construed. An appointment *nunc pro tunc*, whatever else it may be and however it may be viewed, is certainly extraordinary

and the court declines to find that it may occur by inference.

*Id.* at 466.

It is incumbent upon the court now to decide whether a *nunc pro tunc* appointment should be countenanced and if so, under what circumstances. The Sixth Circuit has not yet spoken on the issue. Its closest approach appears to have been in *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (1984) where, at p. 541, the court said:

> Accordingly, even had Baggott been able to sustain its burden to demonstrate the propriety of the *nunc pro tunc* appointment, *an issue on which this court expresses no conclusion,* the compensation would be denied as a result of the conflict of interest. (Emphasis added)

The phrase, *nunc pro tunc*, literally means "now for then," according to BLACK'S LAW DICTIONARY (5th ed. 1979) and, as indicated by the cases BLACK cites, has come to be applied to acts allowed to be done after the time when they should have been done, with a retroactive effect. The applicant, Mr. Witte, draws the court's attention to a phrase from 2 Collier on Bankruptcy, para. 327.02 (15th ed.1981) to the effect that *nunc pro tunc* orders may be used to "obviate an oversight which would otherwise result in unfair and inequitable consequences." Just what kinds of "oversight" would warrant the use of the *nunc pro tunc* appointment is far from clear, as the next several pages of text and case citations in the Collier section to which Mr. Witte adverts demonstrates.

Some cases have suggested criteria for determining whether or not to grant an application for a *nunc pro tunc* appointment. For instance, *In re Twinton Properties Partnership*, 27 B.R. 817 (Bankr.M. D.Tenn.1983) at pp. 819–20 develops nine factors which the applicant "must affirmatively demonstrate ... by clear and con-

---

**1.** Indeed, it is sad but true that any bankruptcy judge who has been more than a few weeks in his or her position can hardly have escaped the cumbersome, vexatious process of dealing with the compensation of professionals which oftentimes gives rise to the liveliest and most litigious activities in the case. Too frequently, in the court's experience, the rehabilitation of honest but unfortunate debtors, corporate and individual, obtained at the fairest cost possible to their creditors is a consideration secondary to the payment of those charged with leading their clients through the process.

vincing evidence." Of these, at least three seem to have application here:

The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

No actual or potential prejudice will enure to the estate or other parties in interest; and

The applicant's failure to seek pre-employment approval is satisfactorily explained. . . .

### A

Mr. Witte, in fact, noticed no one of his application for *nunc pro tunc* treatment of his request for compensation, other than the United States Trustee who had commented on the gap between the first services charged for and the appointment at the earlier hearing on the compensation application.[2]

### B

Obviously, if funds that would otherwise be available to creditors are paid out as administrative expenses, prejudice will result to those farther down on the Section 507 ladder of priorities.

### C

The following paragraphs from the Motion for Order to Amend Order Authorizing Employment of Counsel constitute Mr. Witte's explanation of his failure to seek pre-employment approval:

3. Upon information and belief, the application was delayed for a period of three weeks while applicant met with the Debtor–in–Possession to determine what problems existed, whether or not the Debtor was a viable entity under Chapter 11 and if compensation would be available to counsel.

4. This case is unique in that a previous counsel represented the Debtor in the filing and the initial stages of the proceeding and numerous adjustments, revisions and procedural requirements were reviewed with the debtor. In the three week period prior to the filing of the application, the services which were performed were required by the U.S. Trustee's Office to meet their demands as well as those of the court.

Contrary to the implication that Mr. Witte spent much time in an intensive overview capacity, assaying the viability of the debtor as a Chapter 11 entity, his detailed time charges annexed to his compensation application show that three days elapsed between his initial charge, a quarter of an hour with an employee of the debtor, and his first meeting with the principals; and in the first six days of his involvement with the debtor in possession, he spent 6.25 hours on the case, including providing the UST with notice of representation.

That is a far cry from the situation in *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768 (Bankr.E.D.Pa.1984). There, creditors' committee counsel sought and was allowed compensation for services rendered between their selection on March 29, 1983 and their actual appointment by the court fifteen days later on April 13, 1983. The court was satisfied that because of an imminent hearing date on April 14, 1983, the belief of creditors that the chief operating officer of the debtor was concealing assets and that information in the schedules and statement of affairs was incorrect, "counsel could not sit back and await the outcome of its application for employment." *Bible Deliverance* at 772.

It is impossible to find any similar urgency or frantic activity in this case which would have diverted Mr. Witte's attention from his responsibility to cause an application for his retention to be brought before

---

2. This lapse in notice of the *nunc pro tunc* appointment question may be regarded as entirely technical as no one but the UST took an interest in Mr. Witte's compensation at the hearing thereon, which was properly noticed. However, the matter of the date of Mr. Witte's appointment and the propriety of compensating

him for services rendered prior thereto was not at issue in the original fee hearing until the UST raised it. We cannot say that interested parties, being apprised of Mr. Witte's desire to back date his appointment, would continue to remain mute.

the court. Neither can it be found that Mr. Witte, one of the more active practitioners before this court, was unaware of the requirement of the Bankruptcy Code and Rules relative to a debtor's retention of counsel, assuming that such ignorance, if it existed, would excuse compliance. It is simply evident that Mr. Witte overlooked his obligation to attend timely to his retention.

The court makes no finding relative to another of the criteria set forth in *Twinton:*

> The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

*In re Twinton Properties Partnership,* at 819–20. The UST makes the following observation, however: "As this court is aware, the failure of this specific professional to secure an order of appointment as counsel for the debtor and debtor in possession is not a unique occurrence." (Memorandum in Support of Objection of UST, p. 3).

Simply let note be taken that this court, while not subscribing to a *per se* rule against *nunc pro tunc* appointments, does find the following language from *In the Matter of Arkansas Company, Inc.,* 798 F.2d 645, 650 (3d Cir.1986) to contain an acceptable approach to the problem posed by applications for such appointments:

> To summarize, we hold the retroactive approval of appointment of a professional may be granted by the bankruptcy court in its discretion but that it should grant such approval only under extraordinary circumstances. Such circumstances do not include the mere neglect of the professional who was in a position to file a timely application. When considering an application, the bankruptcy court may grant retroactive approval only if it finds, after a hearing, that it would have

granted prior approval, which entails a determination that the applicant satisfied the statutory requirements of 11 U.S.C. §§ 327(a) and 1103(a) that the applicant be disinterested and not have an adverse interest, and that the services performed were necessary under the circumstances. Thereafter, in exercising its discretion, the bankruptcy court must consider whether the particular circumstances in the case adequately excuse the failure to have sought prior approval. This will require consideration of factors such as whether the applicant or some other person bore repsonsibility (sic) for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

Consistent with the foregoing, the court will disallow substantially all charges for services rendered prior to November 2, 1988, the date the application to employ Mr. Witte was filed.[3] Practically, of course, at least a modest amount of activity will often be performed prior to the presentation of an application to be employed and the court views Mr. Witte's reviewing actions on October 7, 1988 and October 10, 1988 as compensable and his expenses in connection therewith as reimbursable. He additionally apparently advanced a $20.00 filing fee for amendments on October 24, 1988, arguably an aid to the ultimate administration of the estate.

Therefore, an order will issue allowing compensation to Mr. Witte as attorney for the debtor in possession in the amount of $1,989.50 (17.3 hours including charges rendered on October 7 and October 10, 1988 and from November 3, 1988 through February 6, 1989 × $115.00 per hour) and $57.95 in reimbursement of his out-of-pocket ex-

---

3. Technically, of course, the date of the court's order approving the employment controls Mr. Witte's status in the case. Perceiving no activity, or lack thereof, on Mr. Witte's part which would account for the lapse in time between the application and the entry of the order authoriz-ing employment on November 17, 1988, the court will use the earlier date. The UST appears to be in accord with this approach for his objection urges November 2, 1988 as the proper starting date for compensation.

penses during the time for which compensation is allowed.

Because of the phraseology of the application for compensation, the issue of disgorgement may be present. ("Petitioner has been paid $2,500.00 to date ..." Application p. 2, para. 6) It should not be, for Mr. Witte has not as yet been authorized to be paid anything. It is presumed that the funds advanced by the debtor in possession as a retainer are readily available from some sort of escrow or trustee account under Mr. Witte's control. At such time as it is determined that the expenses of administering the debtor's Chapter 7 case will permit payment of the Chapter 11 administrative expenses, Mr. Witte may apply a total of up to $2,047.45 to his allowed compensation and reimbursement of expenses and remit the balance of $452.55 to Michael V. Demczyk, the trustee in the debtor's Chapter 7 case.