**In re UNITED COLOR PRESS, INC., Debtor in Possession.**

**Bankruptcy No. 3–90–05738.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 21, 1991.

Ronald S. Pretekin, Dayton, Ohio, for debtor.

Robin Smith Hoke, Columbus, Ohio, for Unsecured Creditors Committee.

Thomas R. Noland, Dayton, Ohio, for Buccino & Associates, Altick & Corwin.

Linda Battisti, Office of U.S. Trustee, Columbus, Ohio.

DECISION AND ORDER DENYING APPLICATION OF DEBTOR IN POSSESSION TO RETAIN BUCCINO AND ASSOCIATES, INC., AS MANAGEMENT CONSULTANT

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court is an "Application for Authority to Retain Management Consult-

ing Firm" (Doc. No. 46) filed by the debtor in possession, United Color Press, Inc.; an "Objection of the Unsecured Creditors Committee to Debtor's Application for Authority to Retain Management Consulting Firm" (Doc. No. 79); and a "Comment of United States Trustee to Application for Authority to Retain Management Consulting Firm Filed by Debtor-in-Possession" (Doc. No. 58). This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTS

Early in November of 1990, Patrick Mazza, the principal owner of United Color Press, Inc. ("UCP"), requested Buccino and Associates, Inc. ("Buccino") to make an assessment of the financial and operational condition of UCP. Subsequently, Buccino was engaged to develop and assist in the implementation of a turnaround plan for UCP. Despite the efforts of Buccino, it was determined in December that UCP should file for reorganization under chapter 11 of the Bankruptcy Code.

Prior to filing a petition in bankruptcy, however, it was discovered that, under state law, UCP did not have enough directors serving on its board to permit it to prepare a resolution authorizing the bankruptcy filing. Mr. William C. Morro, a vice-president and engagement manager of Buccino, testified that, at the request of Mr. Mazza, he agreed to accommodate UCP by serving on its board of directors in order to ensure that there would be an adequate number of directors to act on the resolution to file bankruptcy. According to Mr. Morro, there was insufficient time to make changes in the bylaws to permit the two sitting directors to approve the bankruptcy resolution. Mr. Morro also testified that approving the bankruptcy resolution was the sole action taken by him as a director and that he received no compensation as a director. In accordance with the resolution of UCP's directors, UCP filed a chapter 11 petition in bankruptcy on December 28, 1990.

On the same date UCP, as a debtor in possession, entered into an agreement with Buccino under which Buccino was to:

provide counsel and undertake tasks as directed related to the development of collection strategies for pre- and post-petition receivables, preparation of both liquidation and reorganization budgets and plans, and the resolution of operating issues (Movant's Exhibit 1).

In Mr. Morro's view, UCP's chances of successfully reorganizing rested on its ability to retain its customer base, i.e., persuading its existing customers to continue doing business with it. As a result, Buccino and various members of UCP's marketing staff negotiated at length with key customers in an attempt to convince them to remain customers of UCP. Although some success was achieved, by February it became apparent that there were not enough customers willing to continue to do business with UCP to permit a successful reorganization.

During the period following UCP's filing of its bankruptcy petition, Buccino created a financial plan for UCP, monitored its operation on a weekly basis, and provided UCP's management with the information necessary for them to make decisions in compliance with the financial plan. In addition, Buccino spent a considerable amount of time overseeing the collection of receivables and negotiating with customers in regard to past due receivables in attempting to ensure collection of the receivables or at least the recognition by the customers of the validity of the receivables. During its period of employment, Buccino oversaw the collection of $2 million in receivables.[1] According to Mr. Morro, all of Buccino's activities were performed in its role as a "management consultant," i.e., all of its decisions were subject to review and approval by officers of UCP, and Buccino was not in control of the company.

---

1. All proceeds from these receivables were remitted to a secured creditor, Signal Capital Corporation.

With respect to the failure of Buccino to obtain court approval of its employment by UCP prior to engaging in postpetition services, Mr. Morro stated that Buccino, as a national firm, has worked extensively around the country [2] and been confronted with differing judicial attitudes regarding Buccino's role in bankruptcy cases. In some jurisdictions Buccino has been considered a "professional person," and in others it has been regarded as part of the management team. As a result, Buccino defers to counsel for the debtor in possession regarding Buccino's role in any particular jurisdiction and what steps are necessary to secure its employment. In any event, Mr. Morro believed that the explicit inclusion of Buccino in a projected budget presented at the hearing on an interim financing order, as well as disclosure of Buccino's employment at such hearing, would ensure that Buccino was properly employed to perform services for UCP.

Ronald Pretekin, counsel for UCP, testified that he was initially under the impression that, because Buccino had been hired as a consultant prior to the filing of UCP's bankruptcy petition, Buccino could continue to be employed on the basis of an ongoing executory contract. Subsequently, after researching the issue, Mr. Pretekin concluded that it would be prudent for Buccino to file an application for court approval of its employment. Mr. Pretekin also testified that Buccino possessed a great deal of expertise and knowledge in the bankruptcy area and provided him and the debtor in possession with significant assistance. In addition, Buccino was able to regain some of the confidence of customers and vendors in the management of the debtor in possession.

## CONCLUSIONS OF LAW

Initially, the court must determine whether Buccino is a "professional person" within the provisions of § 327 of the Bankruptcy Code, thereby subjecting its employ-

ment to court approval. Section 327(a) provides that:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

■ The term "professional person" is not defined by the Bankruptcy Code, but case law provides some guidance. Generally, "[p]ersons who offer services normally performed by professionals, such as appraisers or management consultants, have been designated as professionals, while persons who are involved in the mechanics of a debtor's business have been found not to be within that category of persons." *In re Frederick Petroleum Corp.*, 75 B.R. 774, 779 (Bankr.S.D.Ohio 1987). Nevertheless, regardless of a person's title or whether he is considered a "professional" outside of the context of bankruptcy proceedings, the phrase "professional persons" as used in § 327(a) is a term of art and is reserved for those persons playing a central and intimate role in the reorganization of the debtor's estate. *Committee of Asbestos–Related Litigants and/or Creditors v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 60 B.R. 612, 619 (Bankr.S.D.N.Y.1986); *Matter of Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr. S.D.N.Y.1981).

■ In the instant matter, although the attempt to reorganize has been abandoned, the court finds that Buccino played a "central and intimate role" in the initial effort to reorganize UCP. Buccino created a financial plan, monitored its operation, provided UCP's management with required financial information, and engaged in the critical tasks of collecting accounts receivable and seeking to reestablish customer confidence. That Buccino's services did

---

**2.** Mr. Morro testified that Buccino has been in existence for 10 years and has worked on over 500 turnaround or workout matters, although

not all have involved the filing of a bankruptcy petition.

not enable UCP to successfully reorganize does not alter the basic nature of Buccino's role in UCP's reorganization attempts. Because this role was central and intimate in UCP's reorganization attempt, the court finds in this bankruptcy case that Buccino is a "professional person" under § 327 of the Bankruptcy Code.

█ The United States trustee has objected to the appointment of Buccino as a professional person on the ground that it is not a "disinterested person" as required by § 327(a). Section 101(13)(A) of the Bankruptcy Code states that a "disinterested person" means that a person "is not a creditor, an equity security holder, or an *insider*" (emphasis added). In turn, § 101(30)(B) defines an "insider" to include a director of the debtor. Therefore, argues the United States trustee, because Mr. Morro, a vice-president of Buccino, has served as a director of UCP since December 26, 1990, Buccino is not a "disinterested person" and is prohibited by § 327(a) from being employed by the debtor in possession as a professional person.

There is no question that, even though Mr. Morro's role as a director was extremely limited, the United States trustee's position is supported by a literal reading of the Bankruptcy Code. In *Matter of Federated Department Stores, Inc.*, 114 B.R. 501 (Bankr.S.D.Ohio 1990), the court observed that courts must apply common sense when interpreting statutes and rejected a literal reading of § 327(a) of the Bankruptcy Code. The court noted that:

> The purpose behind the disinterested person requirement is to identify persons who exhibit a risk of acting in a manner calculated to maximize their own interests at the expense of the best interests of the estate. *Id.* at 504.

In addition, the court stated that:

> While some courts do interpret § 327(a) literally, the better analysis is to balance the risk and gravity of the potential conflict of interests with the costs that the estate and perhaps the public would incur in the event of disqualification of the professional. Some of these costs include the additional expense and

delay in getting a substitute professional up to speed and the loss of the original professional's superior expertise that the substitute professional cannot replace. *Id.*

Until recently, despite Buccino's inability to serve as a professional person under a literal reading of § 327(a), this court would have been inclined to follow the rationale of *Federated Department Stores, Inc.* and would have balanced the pragmatic considerations in hiring Buccino as a management consultant against the potential for abuse created by the appointment of one of Buccino's employees as a director of UCP. However, on June 6, 1991, the court of appeals for this court issued a decision, *E. Franklin Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723 (6th Cir.1991), which prevents this court from employing an equitable remedy under § 327(a):

> The debtors admit that Jacques, Inc. is not a disinterested person. The debtors argue, however, that because the Bankruptcy Court found that the debtors would be best served if they were able to employ Jacques, Inc., the Bankruptcy Court's equitable powers allow it to give approval. Section 327(a) clearly states, however, that the court cannot approve the employment of a person who is not disinterested, even if the person does not have an adverse interest. This Court has held that bankruptcy courts "cannot use equitable principles to disregard unambiguous statutory language." *In re C–L Cartage Co., Inc.*, 899 F.2d 1490, 1494 (6th Cir.1990). Therefore, the District Court was correct in reversing the Bankruptcy Court. The equitable powers of section 105(a) may only be used in furtherance of the goals of the Code. By forbidding employment of all interested persons, section 327 prevents individual bankruptcy courts from having to make determinations as to the best interest of the debtors in these situations. Section 105(a) cannot be used to circumvent the clear directive of section 327(a). *Id.*, 934 F.2d at 725.

Although this court believes the retention of Buccino by the debtor in possession was economically prudent and that Mr. Morro's limited role as a director did not harm either the bankruptcy estate or creditors, based on the stringent interpretation of § 327(a) set forth in *Middleton Arms, L.P.,* this court is constrained to find that because an employee of Buccino served as a director of UCP, Buccino is statutorily not a "disinterested person" and may not, therefore, be appointed a "professional person" under § 327(a).

It should be noted, however, that this decision makes no determination of whether Buccino's fees may be charged to a secured creditor under § 506(d) or some other bankruptcy principal. It is merely decided that those expenses will not be borne by the unsecured creditors of UCP. At the hearing, it did not appear that any of the proceeds of UCP's accounts receivable or other assets of UCP would be available for distribution to unsecured creditors. As a result, any fees paid to Buccino by UCP were in effect a deduction from the distributions to the secured creditor, Signal Capital Corporation, and were not charged to the unsecured creditors. In the event that the proceeds from accounts receivable and other assets payable to Signal Capital Corporation (*without* deduction of Buccino's fees) exceed the secured claim of Signal, the fees paid to Buccino will affect the unsecured creditors. Therefore, UCP is not authorized at this time to make any distributions to Signal Capital Corporation exceeding the amount of Signal's secured claim minus the fees paid to Buccino.

It is hereby ORDERED that the application of the debtor in possession to retain Buccino and Associates as a management consultant under 11 U.S.C. § 327(a) is DENIED.