### In re MARION CAREFREE LIMITED PARTNERSHIP, Debtor.

### Bankruptcy No. 93-33011.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

July 12, 1994.

---

Verne Armstrong, Asst. U.S. Atty., Toledo, OH.

Brendan Collins, Dept. of Justice, Washington, DC.

Thomas Schafer, Office of Gen. Counsel, Dept. of Housing and Urban Development, Washington, DC.

John Gustafson, Toledo, OH, for Ltd. Partners of Marion Carefree Ltd. Partnership.

Richard Ricketts, Michelle Sutter, Columbus, OH, for debtor.

John Kennedy, Columbus, OH, for Westminster Mgmt.

Andrew Vara, Office of U.S. Trustee, Cleveland, OH.

**OPINION AND ORDER GRANTING MOTION TO STRIKE AND DENYING MOTION TO "APPROVE" PROPOSED MANAGEMENT AGREEMENT AND MANAGEMENT PLAN**

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon Marion Carefree Limited Partnership's ("MCLP") motion to "approve" a proposed management agreement and management plan between MCLP and Westminster Management Company ("Manager") pursuant to 11 U.S.C. § 363 to which objections have been filed by the United States Trustee ("UST") and the United States of America ("HUD"), on behalf of the Secretary of Housing and Urban Development. In addition, MCLP has moved the Court to strike certain exhibits contained in HUD's post-trial brief. The Court finds that MCLP's motion to strike certain exhibits contained in HUD's post-trial brief is well taken and should be granted. The Court further finds that MCLP's motion to approve the proposed management agreement and management plan between MCLP and Manager is not well taken and should be denied.

### FACTS

MCLP filed a petition under chapter 11 of title 11 on October 21, 1993 (the "Petition Date").

Development Corporation of America ("DCOA") is MCLP's general partner. Ralph E. Hazelbaker, a former general partner of MCLP, serves as the president of DCOA.

MCLP owns and operates an 81 unit retirement service center in Marion, Ohio (the "Project"). On-site employees perform the day-to-day operations of the Project. These employees include an on-site manager, a secretary, maintenance staff, housekeeping staff, cooks and dieticians. See Management Plan, p. 2, para. 1.

In January of 1993, MCLP retained Manager to perform managerial tasks including marketing, personnel management, and financial and accounting services. Thomas J. Stewart ("TJS") presently serves as president of Manager and owns 100% of its stock. TJS testified that he received an MBA from Columbia University and has been a CPA since 1972. TJS further testified that he has performed approximately six other management contracts similar to the proposed contract between MCLP and Manager.

TJS testified that he was familiar with provisions in a certain regulatory agreement (the "Regulatory Agreement") between MCLP and HUD which prohibited MCLP from contracting for management services for the Project without HUD approval. Nevertheless, TJS testified that Manager agreed to manage the Project on a "short term basis" in 1993. According to TJS, Manager has not received any compensation for its services in managing the Project since January, 1993.

Manager was a creditor of MCLP on the Petition Date. However, Manager has agreed to waive its claim against MCLP if retained as a professional in MCLP's chapter 11 case.

MCLP seeks to continue its employment of Manager to perform marketing, personnel management and financial and accounting services postpetition on a month to month basis for a fee of $4,800 per month.

Pursuant to MCLP's plan of reorganization, DCOA intends to assign its general partnership interest to Manager in exchange for a payment by Manager of $25,000.00. See Plan of Reorganization of Debtor, Marion Carefree Limited Partnership, p. 10, para. 7.

The extent of Manager's proposed services are more fully set forth in a proposed "Housing Management Agreement" between MCLP and Manager on October 21, 1993 (the "Proposed Agreement"). See Exhibit A, Housing Management Agreement. The Proposed Agreement purports to incorporate a "Management Plan" dated February 21, 1994 which sets forth "the policies and procedures to be followed in the management of the Project". See Proposed Agreement, p. 2, § 5.

Significantly, the Proposed Agreement does not bind either MCLP or Manager. See Proposed Agreement, p. 11, § 28a. (stat-

ing that the Proposed Agreement "will not be binding upon [MCLP and Manager] until endorsed by [the United States Department of Housing and Urban Development and Puller Mortgage Associates, Inc. and/or the United States Federal Housing Administration]"). MCLP did not adduce any evidence at the hearing on this matter indicating that either HUD, Puller Mortgage Associates, Inc. or the United States Federal Housing Administration had endorsed the Proposed Agreement. Nonetheless, the Court views the Proposed Agreement as some evidence of the intended scope of Manager's employment by MCLP.

Pursuant to the Management Plan, "[a]ll phases of project management shall be the responsibility of [Manager]. [Manager] will direct the [Project's] Resident Manager as its subagent in the implementation of all policies, programs and procedures incident to the operations of the [P]roject, as established by [MCLP]". *See* Management Plan, p. 1, para. 1.

More specifically, the Management Plan provides Manager with key personnel responsibilities including formulating personnel policies, hiring personnel, training personnel and addressing grievances. *See* Management Plan, p. 2, para. 2–3. TJS testified that Manager is, in fact, presently performing such services.

TJS further testified that Manager employs three individuals who are responsible for the Project's general accounting, payroll accounting, and cash management. Manager also employs an individual who supervises this accounting staff and monitors the Project's financial reporting.

Further, Manager's duties include marketing activities which must comply with governmental guidelines. *See* Proposed Agreement, p. 3, § 9; Management Plan, p. 3, para. 2–3.

Manager also bears the responsibility for renting the Project's apartment units and collecting rents. *See* Proposed Agreement at p. 3–4, § 10–11; Management Plan at p. 1, para. 4 and p. 3., para. 4–7.

Additionally, the Proposed Agreement contemplates that Manager will "negotiate com-

mercial leases and concession agreement[s]". *See* Proposed Agreement, p. 4, § 10f.

Prior to 1993, MCLP was managed by Paradigm Management Group, Inc. ("Group"), an insider and a creditor of MCLP. TJS served as president of Group in 1992. Prior to 1992, TJS served as vice president of Group. TJS acknowledged that certain alleged improper payments to Group were made by MCLP during the period which he was employed by Group.

TJS' testimony and his affidavit filed in this matter (the "Affidavit") indicated that Group "ceased operating as of December, 1992". *See* Affidavit of Thomas J. Stewart, p. 2, para. 8. Nonetheless, according to MCLP's statement of affairs, Group "kept or supervised the keeping of books of account" on the Petition Date. *See* MCLP's Statement of Affairs, p. 5, question 17. Further, at the hearing on this matter, TJS acknowledged that he signed a letter which was addressed to a HUD auditor as "President of Paradigm Management Group, Inc." on April 26, 1993. Moreover, MCLP continued to make payments to Group during 1993 in the amount of $4,000.00 per month, an amount which approximates the amount of Manager's monthly management fee. *See* MCLP's Statement of Financial Affairs, p. 2, question 3.

A review of the documents filed in MCLP's bankruptcy case also indicates that Manager and Group apparently have the same mailing address.

### DISCUSSION

#### MCLP'S MOTION TO STRIKE CERTAIN EXHIBITS SUBMITTED WITH HUD'S POST-TRIAL BRIEF

■ The Court concludes that MCLP's motion to strike certain exhibits contained in HUD's post-trial brief is well taken. In view of the fact that MCLP has not been provided with any opportunity to cross-examine or rebut the hearsay statements contained in such exhibits, the Court shall not consider these documents in deciding the instant matter. *See Jackson v. Frank*, 859 F.Supp. 1250 (E.D.Mo.1994) (denying motion to supplement record with hearsay statements in cir-

cumstances where, even if such statements would be admissable under an exception to the hearsay rule, opponent was deprived of opportunity to cross-examine or rebut such hearsay statements).

■ Furthermore, HUD's attempt to supplement the record is untimely. Although HUD's claim that it was surprised to learn that TJS was formerly employed by Group appears plausible since the Affidavit was not filed with the Court until April 11, 1994, HUD did not seek a continuance of the hearing on this matter in order to present additional evidence.

## MCLP'S MOTION FOR APPROVAL OF MANAGEMENT AGREEMENT AND PLAN

The Court finds that MCLP's motion to approve the Proposed Agreement and the Management Plan is not well taken.

### Whether MCLP Must Obtain Court Approval Under § 327 to Employ Manager

MCLP argues that Manager is not a professional who must obtain Court approval pursuant to § 327. The Court disagrees.

■ The Court agrees with MCLP that a debtor-in-possession enjoys broad discretion in operating its business postpetition. 11 U.S.C. § 1108. However, such discretion is not unlimited. More to the point, § 1107(a) subjects a debtor-in-possession "to any limitations on a trustee serving in a case under [chapter 11]". 11 U.S.C. § 1107(a). Therefore, MCLP must seek court approval prior to the employment of "professional persons". See 11 U.S.C. § 327(a).

■ Those persons who fall within the specifically delineated groups of "attorneys, accountants, appraisers, [and] auctioneers" have been appropriately categorized as "professional persons" under § 327(a). 11 U.S.C. § 327(a). On this score, Manager's proposed duties in providing general accounting, payroll accounting, cash management and supervisory services for such accounting tasks represent the services of an "accountant" under § 327.

■ Moreover, Manager fits squarely within the category of an "other professional person[ ]" under § 327(a).

In circumstances where "the person seeking to be appointed as a trustee's [or a debtor-in-possession's] agent actually impacts upon the administration of the debtor's estate, that person may be a professional person regardless of the label given to its function." In re Frederick Petroleum Corp., 75 B.R. 774, 779 (Bankr.S.D.Ohio 1987) (citations omitted). In determining whether a person which a debtor-in-possession seeks to employ is an "other professional person[ ]", a court must examine "the degree of autonomy within which the person will operate and the degree of supervision or direction required by the debtor-in-possession". In re Frederick Petroleum Corp., 75 B.R. at 780; see In re Riker Indus., Inc., 122 B.R. 964, 973 (Bankr.N.D.Ohio 1990) (stating that a person who plays a central role in the administration of the estate is a professional person) (citations omitted).

The nature of Manager's duties and the degree of autonomy which Manager enjoys in performing these duties compel the conclusion that Manager is an "other professional person[ ]" within the meaning of § 327(a). See Stahl v. Bartley Lindsay Co. (In re Bartley Lindsay Co.), 137 B.R. 305, 309 (D.Minn.1991) (financial advisor and workout consultant was a professional in case where advisor "acted with relatively unfettered discretion and autonomy in supervising the day-to-day affairs of the [debtor's] business" and "was effectively responsible for the operation of the [d]ebtor's company"); In re United Color Press, Inc., 129 B.R. 143, 145 (Bankr. S.D.Ohio 1991) (management consultant who formulated financial plan for debtor, monitored debtor's operations, collected accounts receivable, and sought to reestablish customer confidence was a "professional person" under the Bankruptcy Code); In re Metropolitan Hospital, 119 B.R. 910 (Bankr. E.D.Pa.1990) (specialized collection agency was a professional); In re Neidig Corp., 117 B.R. 625, 629–30. (Bankr.D.Colo.1990) (company employed to operate chapter 11 debtor's radio station was a professional person); In re Washington Mfg. Co., 101 B.R. 944, 959

(Bankr.M.D.Tenn.1989) (management consultants who performed management functions were professionals); *In re Rusty Jones, Inc.*, 109 B.R. 838, 842 (Bankr.N.D.Ill.1989) (retaining person to perform lease negotiations, dispose of nonessential assets, supervise personnel, perform accounting functions and formulate a business plan required court approval under § 327); *In re Microwave Products of America, Inc.*, 94 B.R. 971 (Bankr. W.D.Tenn.1989) (public relations firm was a professional within the purview of § 327); *In re Hospitality Ltd.*, 86 B.R. 59 (Bankr. W.D.Pa.1988) (management company was a professional); *In re Carolina Sales Corp.*, 45 B.R. 750 (Bankr.E.D.N.C.1985) (management consultant was a professional); *In re Schatz Federal Bearings Co.*, 17 B.R. 780, 783 (Bankr.S.D.N.Y.1982) (former directors of debtor "retained by the debtor because of their professional and financial acumen" were professional persons). First, Manager has significant responsibility in the area of personnel management. Second, Manager's duties in performing general accounting, payroll accounting and cash management and supervising these same functions play a critical role in providing MCLP's estate with financial data. Third, Manager's marketing responsibilities, including ensuring compliance with governmental guidelines, are central to MCLP's reorganization. Fourth, in collecting rents for MCLP, Manager performs significant fiduciary duties on behalf of the estate. Fifth, in negotiating commercial leases and concession agreements, Manager plays an important role in the administration of the estate. Lastly, TJS' testimony and the first paragraph in the Management Plan which declares that Manager bears responsibility for "[a]ll phases of [P]roject management" leave little doubt that Manager functions with a substantial degree of autonomy in performing the above services.

The instant matter is readily distinguishable from cases involving the employment of persons who perform ministerial duties. *See In re Riker Indus., Inc.*, 122 B.R. at 973 (services for debtor including securing debtor's premises, changing locks, posting accounts receivable, checking inventory, and showing debtor's facility to interested purchasers not within the scope of § 327(a)).

Indeed, the Court is concerned with the apparent extent to which MCLP has delegated its fiduciary duties to Manager. *See In re Lowry Graphics, Inc.*, 86 B.R. 74, 76 (Bankr. S.D.Tex.1988) (discretion afforded to trustee by the Bankruptcy Code "d[id] not include leave to delegate virtually all of his specific duties as a representative of the court, without prior notice to creditors and without leave of court") (citations omitted); *In re William A. Smith Constr. Co.*, 77 B.R. 124, 127 (Bankr.N.D.Ohio 1987) (finding that having a consultant serve "at the helm" of debtor or corporation did not comport with the managerial requirements set forth in § 1107 and § 1108 in appointing a trustee).

## Whether HUD is Estopped From Objecting to the Employment of Manager

Contrary to MCLP's argument, HUD's purported prior actions cannot estop HUD from objecting to Manager's employment. *See In re B.E.T. Genetics, Inc.*, 35 B.R. 269, 273 (Bankr.E.D.Cal.1983) (creditors were not estopped from objecting to attorneys' fees based on alleged prior knowledge of conflict). Furthermore, this Court has an independent duty to ensure itself that professionals employed by a debtor meet the requirements of § 327(a). *Interwest Business Equipment, Inc. v. U.S. Trustee (In re Interwest Business Equipment, Inc.)*, 23 F.3d 311 (10th Cir.1994).

## Whether Manager is Disinterested

In light of the fact that Manager is the prospective purchaser of MCLP's general partnership interest, the Court finds that Manager is not disinterested and holds an interest adverse to the estate. *See In re CF Holding Corp.*, 164 B.R. 799 (Bankr.D.Conn. 1994) (special financial advisor and bankruptcy consultant was no longer disinterested and held an interest adverse to estate when managing partner of financial advisor subscribed to stock in entity which was seeking to purchase majority interest in debtor); *see also Rome v. Braunstein*, 19 F.3d 54, 61–62 (1st Cir.1994) (affirming denial of compensation for counsel's conflicts of interest which included representation of both debtor and purchaser of property of debtor's estate in

the same transaction); *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 442 (Bankr. E.D.N.C.1984) (attorney's representation of debtor and purchaser of property of the estate represented conflict of interest); *c.f. In re Q.P.S., Inc.*, 99 B.R. 843 (Bankr. W.D.Tenn.1989) (debtor not permitted to sell property of the estate to accountant employed by estate even if proposed purchase was for a fair price). To place a prospective purchaser of MCLP's general partnership interest in a position involving substantial autonomy in managing MCLP's affairs, including MCLP's financial reporting, would be untenable.

Moreover, MCLP's reliance upon § 1107(b) is misplaced. "As the court in *Middleton Arms* made clear, Section 1107(b) is a narrow exception, meant to apply only when the sole reason for disqualification is former employment." *Michel v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 999 F.2d 969, 972 (6th Cir.1993) (citing *Childress v. Middleton Arms L.P. (In re Middleton Arms, Ltd. Partnership)*, 934 F.2d 723 (6th Cir.1991)).

### Whether MCLP May Employ a Prepetition Creditor as a Professional

■ The Court further finds that, since Manager is presently a creditor of MCLP, Manager is not disinterested. *See U.S. Trustee v. Price Waterhouse*, 19 F.3d 138 (3rd Cir.1994) (§ 327 prevented debtor from employing prepetition creditor as accountant and financial advisor); *Pierce v. Aetna Life Ins. Co. (In re Pierce)*, 809 F.2d 1356, 1362 (8th Cir.1987) (stating that "the intent of the statute is clear; if a professional is a creditor, then that person is not disinterested under § 101(13) and is subject to disqualification under Section 327(a)"); *In re Siliconix, Inc.*, 135 B.R. 378 (N.D.Cal.1991) (stating that "[t]he language of the statute clearly proscribes employment of creditors, and that is how the statute should be interpreted" in holding that a creditor is per se not disinterested irregardless of the amount that creditor's claim); *In re Frederick Petroleum Corp.*, 75 B.R. 774, 778–79 (Bankr.S.D.Ohio 1987) (§ 327(a) prohibited debtor from employing creditor as a professional person) *c.f. In re Eagle–Picher Indus., Inc.*, 999 F.2d at

969 (6th Cir.1993) (finding that the plain meaning of § 327 prohibited employment of investment banking firm which was not a disinterested person under § 101(14)(B)); *In re Middleton Arms, Ltd. Partnership*, 934 F.2d at 723 (finding that court could not use its equity powers under § 105(a) to circumvent § 327's prohibition against employing professionals who are not disinterested). As the Sixth Circuit stated in *In re Eagle–Picher Indus., Inc.*, "irrespective of whether one understands the rationale behind [a] statute's mandate, there is simply no reasonable basis for ignoring it". *In re Eagle–Picher Indus., Inc.*, 999 F.2d at 972. Despite the fact that Manager has agreed to waive its prepetition claim at some prospective date, Manager is presently a creditor of MCLP. Therefore, Manager is presently not disinterested.

### Whether Manager Has Provided Adequate Information For This Court to Evaluate Its Connections with MCLP, MCLP's Creditors and Other Parties in Interest

In circumstances where a debtor seeks to employ a professional person, Bankruptcy Rule 2014 requires a professional to set forth that professional's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee". Fed.R.Bankr.P. 2014. Rule 2014 further requires a professional person to provide a verified statement indicating the professional's connections with creditors and other interested parties.

In describing the requirements of Rule 2014, the court in *In re Marine Outlet, Inc.* stated that:

> [t]here is no duty placed on the United States Trustee or on creditors to search the record for the existence, vel non, of a conflict of interest of a professional sought to be employed. On the contrary, there is a definite affirmative duty placed on a professional to disclose his or her connection with parties whose interest is or may be antagonistic or opposite to the interest of the general estate[.]

*In re Marine Outlet, Inc.,* 135 B.R. 154, 156 (Bankr.M.D.Fla.1991) (citation omitted); *see also In re Pierce,* 809 F.2d at 1363 n. 20 (stating that "[n]either the bankruptcy court or the trustee, however, should have the responsibility of combing through the often voluminous materials that are filed with the court to ascertain every possible interest in a case"); *In re EWC,* 138 B.R. 276, 281 (Bankr. W.D.Okla.1992) ("The professional cannot pick and choose which connections to disclose. No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it."); *c.f. Rome,* 19 F.3d at 59 (stating that "[a]bsent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed counsel proceed at their own risk") (citations omitted).

Neither Manager nor MCLP has provided the Court with a reasonable explanation for their failure to adequately disclose the fact that Manager was a potential purchaser of DCOA's general partnership interest in MCLP.

■ Moreover, the Affidavit and TJS' testimony have failed to set forth sufficient facts to enable the Court to determine Manager's connections, if any, to Group, a creditor and an insider of MCLP. In light of the fact that Group is alleged to have made improper prepetition payments to insiders of MCLP in violation of the Regulatory Agreement, the Court cannot view Manager's failure to provide adequate information as to any connection with Group as a technical matter.

The Court found TJS' testimony with respect to the relationship between Manager and Group to be incredible. *See Lakewood Mfg. Co. v. Comm'r,* 453 F.2d 451, 454 (6th Cir.1972) ("the trier of fact has always the duty to weigh the evidence presented and has the right to accept or reject such evidence" (citations omitted); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 514 n. 8 (9th Cir.1985) (noting that a court can reject even uncontroverted testimony of a witness "because of its inherent unbelievability, because a witness's demeanor raises doubt as to his sincerity or

because the testimony is clouded with uncertainty") (citation omitted).

Despite TJS' testimony that Group ceased operations at the end of 1992 and that he ceased his employment relationship with Group at that time, TJS acknowledged that he had signed a letter to HUD's auditors as "President of Paradigm Management Group, Inc." in April of 1993. Further, contrary to TJS' contention that Group ceased operations at the end of 1992, MCLP's statement of financial affairs indicates that Group "kept or supervised the keeping of books of account" on the Petition Date. *See* MCLP's Statement of Financial Affairs, p. 5, question 17.

In addition, the Court is concerned with the fact that MCLP's statement of financial affairs lists monthly payments to Group during 1993, despite the fact that Group purportedly ceased operations at the end of 1992. These payments in the amount of $4,000.00 per month approximate the amount of Manager's monthly fee. *See* MCLP's Statement of Financial Affairs, p. 2, question 3. In view of TJS' testimony that Manager purportedly received no compensation from MCLP in 1993, these payments raise further questions as to whether Manager has adequately disclosed any connection to Group.

Additionally, the Court is concerned about the fact that Manager apparently has the same mailing address as Group. Therefore, the Court cannot conclude that MCLP and Manager have provided the Court with sufficient information to enable the Court to determine the extent, if any, of Manager's connections to Group.

**Whether Manager is Entitled to Nunc Pro Tunc Approval**

■ Neither MCLP nor Manager provided the Court with any indication that extraordinary circumstances prevented MCLP from seeking Court approval for retaining Manager at any date prior to the hearing on this matter. *See Land West v. Coldwell Banker Commercial Group, Inc. (In re Haley),* 950 F.2d 588, 590 (9th Cir.1991) (finding that real estate broker could not "emerge 'out of the blue,'" and receive compensation without having obtained prior court approval); *Land v. First Nat'l Bank of Alamosa*

*(In re Land),* 943 F.2d 1265, 1267 (10th Cir.1991) (simple neglect in seeking appointment did not justify nunc pro tunc approval of attorney fees); *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.),* 844 F.2d 99 (3rd Cir.1988) (finding no extraordinary circumstances which justified nunc pro tunc approval), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *Frank v. Pica Systems, Inc. (In re Pica Systems, Inc.),* 124 B.R. 30, 33 (E.D.Mich.1991) (denial of motion for nunc pro tunc approval did not represent an abuse of discretion absent exceptional circumstances); *In re Platinum Power Co.,* 105 B.R. 381, 383–84 (Bankr. N.D.Ohio 1989) (denying nunc pro tunc approval absent showing of extraordinary circumstances). Manager has not provided any probative evidence that time pressures prevented Manager from seeking prior court approval. Nor is the Court persuaded that Manager would have met the requirements of § 327(a) if MCLP had sought to employ Manager at an earlier date. Moreover, a professional person serving in a bankruptcy case has the "responsibility to know that such approval is necessary and to insure that it has in fact been sought". *In re F/S Airlease II, Inc.,* 844 F.2d at 107. Lastly, the equities in this case militate against granting nunc pro tunc approval of Manager's employment. As in *In re F/S Airlease II, Inc.,* "[h]ad prior approval been sought in this case, the issue of [Manager's] disinterestedness would have been brought out in the open during the hearing and resolved prior to [Manager's] having performed the services for which [it] now seeks a fee". *In re F/S Airlease II, Inc.,* 844 F.2d at 106.

In light of the foregoing, it is therefore

ORDERED that MCLP's motion to strike be, and it hereby is, granted. It is further

ORDERED that MCLP's motion to "approve" the proposed management agreement and management plan with Westminster Management Company be, and it hereby is, denied.