In re BLUE STONE REAL ESTATE, CONSTRUCTION & DEVELOPMENT CORPORATION, et al., Debtors.

Nos. 8:08–bk–05299–CPM, 8:08–BK–07228–CPM, 8:08–BK–07230–CPM, 8:08–BK–07229–CPM, 8:08–BK–07231–CPM, 8:08–BK–07227–CPM.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 9, 2008.

Edmund S. Whitson, III, Akerman Senterfitt, Tampa, FL, for related debtor, DDD Ranch, Inc.

Theresa M. Boatner, Cynthia Burnette, Denise Barnett, Patrick Tinker, Office of U.S. Trustee, Tampa, FL, for U.S. Trustee.

***AMENDED[1] ORDER GRANTING AND MEMORANDUM OPINION ON DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING RETENTION OF A CHIEF RESTRUCTURING OFFICER***

CATHERINE PEEK McEWEN, Bankruptcy Judge.

These six administratively consolidated cases[2] came on for hearing on July 22, 2008, at 10:30 a.m. with continued hearings on July 24, 2008, at 9:30 a.m. and 4:00 p.m. (collectively, "the Hearing") upon the Debtors' Emergency Motion for Order Authorizing Retention of Steven S. Oscher and Oscher Consulting, P.A. as Chief Restructuring Officer Pursuant to Sections 105 and 363 of the Bankruptcy Code ("CRO Motion") (Docket Nos. 76 and 78). The CRO Motion presents a core contested matter.

In the CRO Motion, the Debtors request an expedited hearing for the Court to consider the entry of an order approving their retention of Steven S. Oscher, C.P.A., and Oscher Consulting, P.A. ("the firm") as their Chief Restructuring Officer ("CRO") to, *inter alia,* (i) review the Debtors' books and records and conduct the necessary

Edward J. Peterson, III, Susan H. Sharp, Stichter, Riedel, Blain & Prosser, Tampa, FL, for debtors.

1. This order amends the Court's August 8, 2008, order to correct drafting errors, to provide the names of the other five Debtors in these consolidated cases, to clarify that not all changes in corporate governance require court approval, to make clear that by the order, the Court is not appointing management but rather is authorizing the Debtors to do so, and to include scheduling information.

2. The other five Debtors are: P.D.Q. Acquisitions, LLC (Case No. 8:08–bk–07227–CPM), Avalon Investment Corp. of Hernando (Case No. 8:08–bk–07228–CPM), DDD Ranch, Inc. (8:08–bk–07229–CPM), Jet Bead, Inc. (Case No. 8:08–bk–7230–CPM), and T.C.B. Acquisitions, LLC (Case No. 8:08–bk–07231–CPM).

investigation to ensure that the schedules and statements of financial affairs are accurately prepared and, if not, prepare and file corrected ones, (ii) conduct a thorough inventory of the assets, (iii) negotiate with and verify the financial viability of all potential purchasers of any of the Debtors' assets, and (iv) oversee and monitor the liquidation of the Debtors' assets.

*Backdrop—the Trustee Motion*

At the time of the Hearing, then pending for trial on August 15, 2008, was the United States Trustee's Emergency Motion to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. Section 1104(a)(1) or (2), or in the Alternative to Appoint an Examiner, pursuant to U.S.C. Section 1104(c)(1) or (2) (Docket No. 51) ("Trustee Motion"). The Trustee Motion seeks relief only in the lead consolidated case, the case filed by Blue Stone Real Estate, Construction & Development Corp. ("Blue Stone"). Some background about the Trustee Motion is necessary to gain an understanding of the record before the Court at the time of the Hearing.

The bases of the Trustee Motion largely relate to alleged acts or omissions of James W. DeMaria, the Debtors' principal, as well as document deficiencies that have plagued the lead case since its inception.[3] The allegations of the Trustee Motion can be summarized as follows: (i) Blue Stone's schedules and statement of financial affairs are incomplete and have been constantly evolving through several amendments (almost like a work in progress), with some amendments having been made only after testimony of Mr. DeMaria at meetings of creditors had been shown to be inaccurate or incomplete; (ii) Mr. DeMaria has not

fully accounted for pre-petition use of Blue Stone credit cards and for pre-petition distributions made by Blue Stone to Mr. DeMaria or for his benefit; (iii) a $100,000 deposit that should have been received by Blue Stone for a sale of a gas station has not been fully accounted for; (iv) after several opportunities for compliance, Mr. DeMaria has not provided all documents requested by the United States trustee; and (v) due to the document deficiencies and lack of cooperation, the meeting of creditors has been continued many times and remains pending.

At the preliminary hearing on the Trustee Motion, an additional basis for the Trustee Motion was proffered by the United States trustee: Within two years of the filing of the Blue Stone bankruptcy petition, Blue Stone transferred or attempted to transfer four parcels of property located in Arkansas and one parcel of property located in Missouri. None of these alleged transfers was disclosed in Blue Stone's schedules and statement of financial affairs. Additionally, none of the property, to the extent Blue Stone has an interest in such property, is disclosed in Blue Stone's schedules and statement of financial affairs. An issue of fact exists as to whether the ultimate transferees of the Arkansas and Missouri properties are affiliates of or controlled by, either directly or indirectly, Mr. DeMaria.

Mr. DeMaria's contention is that all of the transfers were made in the ordinary course of business and, thus, did not require disclosure in the statement of financial affairs. Notwithstanding this assertion, however, at the meetings of creditors, Mr. DeMaria failed to disclose the trans-

---

**3.** The lead case was slow to get out of the gate, so to speak. Initial counsel never sought approval of its retention. Substitute counsel was engaged two months after the petition date. At that time, the United States trustee had, understandably, already begun showing intense interest and grave concern over the course the case had taken up to that point.

fers in response to direct questioning about all transfers of property from Blue Stone (i.e., regardless of their possible characterization as ordinary course transactions). At the time of the Hearing on the CRO Motion, Mr. DeMaria had not had the opportunity to rebut the allegations in the Trustee Motion, explain his conduct, or comment on his responses at the meetings of creditors.

Based on the allegations summarized by the Court above, the Trustee Motion argues that Mr. DeMaria, as "current management" of Blue Stone, "engaged in fraud, dishonesty, gross mismanagement, or is incompetent with regard to managing the affairs of [Blue Stone] both before and after the filing." (Trustee Motion at ¶ 25.) If true, these allegations would require appointment of a Chapter 11 trustee under section 1104(a)(1).[4] The Trustee Motion also claims that Mr. DeMaria's alleged lack of cooperation and his alleged dissipation of assets "have clearly not been in the interest of the creditors of [Blue Stone]." (Trustee Motion at ¶ 25.) If true, these allegations would require appointment of a Chapter 11 trustee under section 1104(a)(2). The Trustee Motion also seeks appointment of an examiner pursuant to section 1104(c) if a Chapter 11 trustee is not warranted.

*Opposition to the CRO Motion*

A. *Objecting parties argue that the proposed CRO is not independent or disinterested and cannot perform as effectively as a Chapter 11 trustee.*

■ During the Hearing on the CRO Motion, the United States trustee and two secured creditors opposed the relief requested by the Debtors. All three parties argued that Mr. Oscher would be controlled or directed by Mr. DeMaria and that Mr. DeMaria would be able to hide assets or documents from Mr. Oscher. However, in open court, Mr. DeMaria agreed to act only as directed by Mr. Oscher and agreed to withdraw from all management functions. Notwithstanding those concessions, the opposing parties insisted that an "independent" and "disinterested" Chapter 11 trustee would be better able to perform the functions that Mr. Oscher would perform as a CRO, including the charge to discover any assets or transfers that remain hidden.

The record made during the Hearing clearly demonstrates that Mr. Oscher and the firm are disinterested, do not hold an interest adverse to the Debtors, and do not represent an interest adverse to the Debtors. Mr. Oscher's engagement was proposed by counsel to the Debtors in the exercise of their fiduciary duty to the Debtors' estates and creditors. Mr. Oscher did not even meet Mr. DeMaria until after the engagement was proposed.

Mr. Oscher's substantial experience with the bankruptcy process, both as a trustee and an authorized professional with various functions or expertise, would be extremely beneficial to these Debtors, especially if the allegations of the Trustee Motion are true. Mr. Oscher is a respected and "well known quantity" to the Court, the United States trustee, and all of the parties in interest represented at the Hearing except for one party represented by out-of-town counsel.[5]

4. All references to a "section" herein are to sections of the Bankruptcy Code, Title 11 of the United States Code.

5. Indeed, the Court takes judicial notice from its own public records that the United States trustee has appointed Mr. Oscher as a Chapter 11 trustee, meaning, the Court infers, that office must have confidence in his abilities and integrity. In this Court alone, he serves or has served as a Chapter 11 trustee in the cases of *J.H. Investment Services, Inc., Daniel*

No party in interest was able to articulate any credible difference between the skill set of a Chapter 11 trustee and the skill set that Mr. Oscher would bring to the table as a CRO. No party in interest was able to identify any power possessed by a Chapter 11 trustee that would not be available or could not be made available under section 1107(a)—concerning the rights, powers, and duties of a debtor in possession—to a CRO whose engagement was authorized by an order of this Court to act on behalf of a debtor in possession.

■ The United States trustee argued that a fundamental difference between a Chapter 11 trustee and a CRO is that by its terms, section 1107(a) limits the ability of a CRO to perform the functions of a Chapter 11 trustee under section 1106(a)(2), (3) and (4). This is a misreading of the statute. The statute states in pertinent part: "Subject ... to such limitations or conditions as the court prescribes, a debtor in possession ... shall perform all the functions and duties [of a Chapter 11 trustee], except the duties described in sections 1106(a)(2), (3), and (4). ..." 11 U.S.C. § 1107(a). A proper reading of this statute is that a debtor in possession is not mandated to undertake certain investigative and reporting duties, but the bankruptcy court in its discretion can nonetheless prescribe such action—as well as *other* actions not encompassed within section 1106. *See In re Adelphia Communications Corp.*, 336 B.R. 610, 665

(Bankr.S.D.N.Y.2006) (lengthy discussion of how courts should construe the nature of the limitations and conditions they are permitted to impose pursuant to section 1107(a)). In these cases, the Court is inclined to require Mr. Oscher to undertake the duties specified in sections 1106(a)(2) and (3). He may, but need not absent further order of the Court, undertake the duties specified in section 1106(a)(4).

On whole, the contentions that Mr. Oscher is not or cannot be independent, is not disinterested, and cannot perform as effectively as a Chapter 11 trustee are not credible and border on being frivolous. These arguments are without any basis in fact or law and are rejected by the Court.

*B.  United States trustee argues that a corporate debtor in possession can act only through a board of directors.*

■ Perhaps in part to persuade the Court that Mr. Oscher is compelled to serve at the direction of Mr. DeMaria and, therefore, cannot be free of Mr. DeMaria's control, the United States trustee also disputed the Court's ability to enter an order imposing conditions or limitations under section 1107(a) that would, in effect, leave the Debtors that are corporations without boards of directors.

A debtor in possession operating in Chapter 11 is not conducting "business as usual" during the time between the com-

L. Prewett, Leapfrog Smart Products, Inc., Atlantic International Mortgage Co., Atlantic International Mortgage Holdings, and Construction Compliance, Inc. In addition, the United States trustee has appointed him to be an examiner in the case of Parview, Inc., and the Court appointed him as an independent examiner in the case of Royal Yacht Club, LLC. He has been authorized to be employed as a forensic accountant in the cases of GSR Development LLC, Guerrini Family Limited Partnership, and Hydro Spa Parts and Acces-

sories, Inc. and as a consultant in Scott Wetzel Services, Inc. He has served as a Chapter 7 trustee in the cases of Conduit Healthcare Solutions, Inc., American Mortgage Capital Inc., and United Container LLC. Even the United States trustee's counsel conceded, at the Hearing, "Mr. Oscher's high standing in the community and the high regard in which he is held" and indicated that "a person of Mr. Oscher's expertise would clearly be the type of person we would appoint [as a Chapter 11 trustee]."

mencement of the case and its emergence from bankruptcy as a reorganized debtor (assuming the debtor reorganizes and is not liquidated). The Bankruptcy Code is laden with express requirements of and limitations on business operations of a debtor in possession, not to mention discretionary requirements and limitations that may be imposed by the bankruptcy court where permitted.[6] As touched on above, section 1107(a) specifically contemplates the use of the court's discretion in the context of what a debtor in possession must do or cannot do because it states that *"[s]ubject ... to the limitations or conditions as the court prescribes,* a debtor in possession shall have all the rights ... and powers ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a) (emphasis added). Accordingly, the Bankruptcy Code contemplates that the state law powers of a corporation's board of directors can be altered while the corporation is a debtor in bankruptcy.[7]

This Court concludes that the plain meaning of section 1107(a) permits the Court to alter the powers of the Debtors' boards of directors (and managers, in the cases of the Debtors that are limited liabil-

ity companies) and impose requirements that will alleviate any concern, however unfounded, of a party in interest that Mr. Oscher as CRO will be some toady or crony of Mr. DeMaria instead of an independent professional with absolute control over the Debtors.

C. *United States trustee argues that the proposal to engage a CRO is a disguised selection of a Chapter 11 trustee by the Debtors, invading the province of the United States trustee*

█ It quickly became apparent to all at the Hearing that the real concern of the United States trustee is its own organizational interest in maintaining control when it seeks the appointment of a Chapter 11 trustee, never mind that the Debtors' retention of this particular CRO in these particular cases just might be (and the Court determines it is, clearly) in the best interest of the Debtors.[8] The United States trustee argued that the CRO Motion is effectively an "end run" on section 1104's mandate that only the United States trustee is empowered to select a Chapter 11 trustee.[9] Therefore, the United States

---

**6.** In addition to section 1107(a), discussed above, see, for example, sections 363(e), 364(a), 1108, 1113, and 1203.

**7.** This result is entirely consistent with Florida law. Certain of the Debtors are Florida corporations, while the others are Florida limited liability companies. In Florida, there is an exception to the rule that corporations must have a board of directors. If the corporation's shareholders agree, they may restrict the board's discretion or powers or even totally eliminate the board. Fla. Stat. §§ 607.0801, 607.0732(1)(a) (2008). Additionally, the operating agreement of a limited liability company may restrict the rights of a manager, member, or transferee of a member's distribution interest. Fla. Stat. § 608.423(2)(f) (2008).

**8.** Counsel for the United States trustee stated at the hearing: "[B]ecause of the timing in this case ... it is clearly inappropriate to allow the Debtor to come in after the allegations have been made ... and attempt to put their person in place, however well respected he is, and circumvent the process under [section]1104."

**9.** This position is obviously based on the proposition that if the Court appoints a disinterested CRO, then the Trustee Motion will be mooted as there will be no facts to support wrongful conduct by "current" management, one of the predicates for the appointment of a Chapter 11 trustee under section 1104(a)(1). It is not unusual for bankruptcy courts to authorize the engagement of CROs as professionals in Chapter 11 cases filed by corporations. See, e.g., *In re Florida Grande Motor*

trustee submits, the Court has no power to authorize the engagement of a CRO that would be the functional equivalent of a Chapter 11 trustee. The United States trustee urges the Court to, instead of granting the CRO Motion, wait for a determination on the Trustee Motion some weeks hence before authorizing a change in management.

In essence, the United States trustee argues that once its office has filed a motion to appoint a Chapter 11 trustee, there are *no* facts or circumstances that would allow a debtor in possession to change management, even if a change in management would obviate the perceived need for a Chapter 11 trustee.[10] Stated alternatively, if a debtor in possession is guided by management that can be proved to be incompetent, or to have engaged in fraud or dishonesty or to have grossly mismanaged the debtor, then the appointment of a Chapter 11 trustee is *fait accompli* and no salutory action can be taken by the debtor to cure that problem.

The United States trustee's argument widely misses the mark because it overlooks two important principles concerning a Chapter 11 debtor in possession. First, the legislative history of section 1107, titled "Rights, powers, and duties of debtor in possession," clearly dictates that the debtor in possession is *already* the functional equivalent of a Chapter 11 trustee:

> *This section places a debtor in possession in the shoes of a trustee in every way.* The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes. . . .

Senate Report No. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin. News 1978 at 5787, 5902 (emphasis added). The natural person or persons who exercise these enumerated powers on behalf of a corporate debtor in possession, therefore, exercise essentially the same powers as a Chapter 11 trustee (or all powers of a Chapter 11 trustee if so ordered by the bankruptcy court). As the Supreme Court has recognized, "it is clear that the [debtor in possession] bears essentially the same fiduciary obligation[s] to the creditors as does the trustee for a debtor out of possession." *Wolf v. Weinstein,* 372 U.S. 633, 649–50, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). Accordingly, by simply approving a change in management at the request of these debtors in possession, the Court is not changing the inherent nature of the debtors in possession as functional equivalents of a Chapter 11 trustee.

Second, the legislative history of section 1104, which prescribes the grounds for appointment of a Chapter 11 trustee, reflects a decided preference for leaving a debtor in possession in place:

> The court may order appointment [of a Chapter 11 trustee] *only if* the protection afforded by a trustee is needed and expenses of a trustee would not be disproportionately higher than the value of

*Coach Resort, Inc.,* Case no. 8:07–bk–04022–CPM, pending in this Court. To take the United States trustee's argument to its extreme, any time a CRO with pervasive control is appointed, the bankruptcy courts are essentially appointing a Chapter 11 trustee. This Court disagrees with that logic. See discussion *infra.*

10. This position is borne out by the following statement made by counsel for the United States trustee at the Hearing: "[W]e're not questioning Mr. Oscher's credentials. We are, however, questioning the procedure here. It is inappropriate."

the protection afforded. The protection afforded by a trustee would be needed, for example, in cases where the *current* management of the debtor has been fraudulent or dishonest, or has grossly mismanaged the company, or where the debtor's management has abandoned the business.

House Report No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, at 5963, 6358 (emphasis added). In these administratively consolidated cases, the protection afforded by a Chapter 11 trustee in containing or overcoming Mr. DeMaria's alleged conduct would not be needed if a CRO with Mr. Oscher's particular talents is authorized to have sole control over the management of the Debtors without interference by Mr. DeMaria. Moreover, case law supports the view that the appointment of a Chapter 11 trustee is an "extraordinary remedy." [11] *In re The 1031 Tax Group, LLC,* 374 B.R. 78, 85 (Bankr.S.D.N.Y.2007).

"Chapter 11 . . . is designed to allow the debtor-in-possession to retain management and control of the debtor's business operations . . . and there is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee." *Adelphia,* 336 B.R. at 655 (internal quotation and citation omitted). Furthermore, there is little question that equity holders of a corporate debtor-in-possession may change the debtor's management; there is nothing in the Bankruptcy Code prohibiting equity from doing so.[12] *1031 Tax Group,* 374 B.R. at 89 n. 11. However, if a motion to appoint a trustee has been made, as in these cases, then section 1104(a)(1) does compel the Court to "examine the integrity of the new management." *Id.* And this Court has done precisely that.

For these reasons, the Court rejects the United States trustee's position that a proposed change of management following the filing of a still pending motion to appoint a Chapter 11 trustee is proscribed by section 1104(a).[13] *See also In the Matter of Gaslight Club, Inc.,* 782 F.2d 767 (7th Cir. 1986) (approving replacement of debtor's president and majority shareholder with individual exercising debtor in possession powers, without appointing trustee, but where the individual who had been replaced consented).

A troubling aspect of the United States trustee's argument that authorization of a CRO treads on its domain is that it elevates a parochial policy concern over the potential harm that could come to these Debtors' estates and creditors if the *status quo* continued pending the trial on the Trustee Motion. If the alarming allega-

---

**11.** These overarching themes of section 1104 were not displaced by the amendments to that section made by the Bankruptcy Abuse and Consumer Protection Act of 2005, as such amendments did not alter the standard for appointment of a Chapter 11 trustee under section 1104(a)(1) or (2).

**12.** This order should not be construed to require court approval of every change in management. The Court's imprimatur would not be required for ordinary-course replacement of officers or directors who would not require court approval as professionals. See discussion *infra.*

**13.** This conclusion is buttressed by section 1105, coupled with section 105(a), which would permit the Court, on its own motion, to terminate a Chapter 11 trustee and "restore the debtor to possession and management of the property of the estate and operation of the debtor's business." If the Court can revoke the appointment of a Chapter 11 trustee, then certainly the Court can consider a motion that would eliminate the need for one in the first place.

tions in the Trustee Motion and the United States trustee's supplemental proffer on the record are true (and the Court must assume the United States trustee believes them to be so), then it is disappointing that the United States trustee has shown more regard for its "turf"—its territorial or organizational interests—than the larger interests of the bankruptcy system it is designed to serve. In other words, the United States trustee has sought to advance its own view of its role in preserving the integrity of the system ahead of the apparently critical need of the Debtors to change management immediately.

As applied to these cases, the United States trustee's view of the facts and the law is short-sighted. It ignores the reality of what the United States trustee accomplished by the very filing of the Trustee Motion—the triggering of a voluntary response that will undoubtedly cure the problems noted in that motion. This reality demonstrates that the United States trustee has effectively functioned to preserve the integrity of the system in these cases, just as it has done in other cases before this Court, time and time again. The United States trustee's view also ignores the reality of what the Debtors require if the Trustee Motion is accurate— an immediate change in management. Yet the Court is prevented from taking immediate action on the Trustee Motion because the contested matter arising from that motion involves disputes of fact that require the parties be given the usual elements of due process, such as discovery and a trial. The CRO Motion presents the perfect opportunity to address the Debtors' problems, as identified by the United States trustee, immediately.

It is the Court's primary obligation to ensure that the Debtors' estates arc operated and administered for the benefit of creditors and equity interest holders consistent with the Bankruptcy Code; that obligation must take precedence over deference to the United States trustee's view of how its own policies are best implemented. Moreover, the Court will consider the Trustee Motion in due course in any event.

*Lack of Substantive Consolidation a Complicating Factor*

Presently, these Debtors' estates are not substantively consolidated. It is clear from the record that transfers were made by some Debtors to other Debtors, and those transfers may or may not be avoidable. As a consequence, there may be a conflict of interest amongst the Debtors. Management of one of the Debtors cannot be called upon to authorize a lawsuit against another Debtor who is operated by the same management. Substantive consolidation, if appropriate, would remove this complication. The Debtors' counsel has announced that the Debtors have considered seeking substantive consolidation. Under the peculiar procedural posture of these cases, the Court will advance that issue on its own motion by separate order.

*Authority Under which the CRO in these Cases Should be Engaged*

Mr. Oscher is clearly a "professional" within the meaning of section 327(a) for purposes of these cases. *See In re First Merchants Acceptance Corp.,* 1997 Bankr.LEXIS 2245, 1997 WL 873551, *3 (D.Del.1997) (providing a list of factors to weigh in determining who is a professional for purposes of section 327(a)); *In re Bartley Lindsay Co.,* 120 B.R. 507, 512 (Bankr. D.Minn.1990) (same proposition but different list); *see also In re Marion Carefree Ltd. P'ship,* 171 B.R. 584 (Bankr.N.D.Ohio 1994) and cases cited therein (given the substance of their engagement, turnaround and workout professionals are professionals within the meaning of section 327(a)); *cf. In re Madison Mgmt. Group, Inc.,* 137 B.R. 275 (Bankr.N.D.Ill.1992) (CEO hired to liquidate assets is a professional, even

though this "officer" was employed *pre-petition*).

■ As a professional, Mr. Oscher's retention or engagement (however it is characterized) should be subject to approval by the Court pursuant to section 327(a).[14] Likewise, his compensation should be subject to review and authorization by the Court.[15]

*Summary of Specific Findings*

The Court has considered the CRO Motion, the arguments of counsel, together with the record (including the record developed at the preliminary hearing on the Trustee Motion), and for the reasons announced on the record at the Hearing and also those stated herein, finds that the relief requested in the CRO Motion is necessary and appropriate, the CRO Motion is well taken and should be granted in accordance with the terms and conditions set forth herein.

Specifically, at this stage in the case, the Court finds that it would be unquestionably in the best interest of the Debtors' estates, creditors and equity interest holders to authorize the Debtors to retain Mr. Oscher as CRO. The Court further finds: (i) Mr. Oscher is well qualified to perform and assume the duties of CRO in each of these cases; (ii) Mr. Oscher and the firm are independent of the Debtors and have had no prior dealings with the Debtors or their principals; (iii) all creditors present at the Hearing, although not all agreeing to the retention of a CRO, concur that Mr. Oscher is well qualified to assume the responsibilities of CRO; and (iv) the Debtors' principal, Mr. DeMaria, consents to the terms of this order, is prepared to disassociate himself from any and all managerial functions he served at the commencement of the Hearing, and is willing to reasonably cooperate on an as-requested basis without compensation should Mr. Oscher determine that his assistance is warranted.

The Court makes no finding herein concerning Mr. DeMaria's conduct in these cases except as noted in the immediately preceding paragraph.

For the foregoing reasons and the reasons stated orally in open court that shall constitute the decision of the Court, it is

**ORDERED** that:

1. The CRO Motion is granted, effective at 5:15 p.m. EDT on July 24, 2008.

2. The Debtors are authorized to retain Steven S. Oscher, C.P.A., as Chief Restructuring Officer of the Debtors pursu-

14. The two main purposes of section 327 arc *to permit the Court to control administrative* expenses in the form of professionals' compensation and ensure that the professional is conflict free and impartial. Absent such judicial oversight and the opportunity for continuing party-in-interest scrutiny of both a professional's retention and compensation, these important goals of the Bankruptcy Code cannot be met. The so-called "Jay Alix" protocol that depends upon section 363 for retention of an executive officer does not provide the Court the same ability to meet the twin goals of section 327 when the candidate for employment is also a professional. Indeed, one part of the protocol abdicates to a board of directors the decision to employ executive officers who may be professionals, as Mr. Oscher would be in these cases, as well as the decision to remove professionals. Somewhat surprisingly, this protocol is apparently embraced by the United States trustee's office even in a case where an executive officer would be deemed to be a professional subject to section 327(a) under the *First Merchants and Bartley Lindsay* analyses. This is a failing of the protocol in such cases. *See* http://www.usdoj.go v/ust/r02/docs/chapt11/manhattan_retention/ Jay_Alix_Protocol.doc.

15. The CRO Motion does not seek authorization for Mr. Oscher's engagement pursuant to section 327, but rather section 363. The Court employs its power under section 105(a) to grant the CRO Motion pursuant to section 327(a).

ant to section 327(a) coupled with section 105(a), and not pursuant to section 363 as requested by the Debtors.

3. Mr. Oscher as CRO shall, on behalf of the Debtors, have and exercise all of the rights, powers, and duties of a debtor in possession pursuant to section 1107(a) of the Bankruptcy Code; he shall, as well, comply with additional conditions prescribed by this Court, which include the performance of the duties specified in sections 1106(a)(2) and (3). At his option, Mr. Oscher may also exercise the duties set forth in section 1106(a)(4).

4. Mr. Oscher shall have sole control over the Debtors' businesses. In addition, Mr. Oscher shall take any and all necessary steps to secure the Debtors' business premises, books and records, and computer systems and prevent access to them except as he deems desirable. In no event shall Mr. Oscher permit Mr. DeMaria hands-on access to the books and records and computer systems of the Debtors absent further order of the Court.

5. Mr. Oscher is further directed to prepare any necessary amendments to the Debtors' schedules and statements of financial affairs by no later than August 15, 2008.

6. The Court will enter a separate order requiring parties in interest to show cause why the Debtors' estates should not be substantively consolidated ("OTSC"). That order will schedule hearing time on August 15, 2008, that is already reserved for a trial on the Trustee Motion. Consequently, the trial on the Trustee Motion is continued to August 19, 2008, at 9:30 a.m.

7. While the OTSC is pending disposition, Mr. Oscher is authorized to pursue fraudulent transfers and preferences against transferees, but not against transferees that are one of the Debtors.

8. Mr. DeMaria's duties and responsibilities are limited to those that Mr. Osch-

er directs Mr. DeMaria to perform, including, but not limited to, cooperating in Mr. Oscher's investigation into the assets, liabilities, and affairs of the Debtors and advising on marketing and selling property of the estates.

9. Neither Mr. DeMaria, Nick Sisto, an accountant with Woodruff & Company, nor any person affiliated with Woodruff & Company shall enter the business premises of the Debtors without the express authority of Mr. Oscher.

10. Mr. Oscher shall take all necessary steps to become the sole signatory on all debtor in possession ("DIP") bank accounts he discovers, including the following:

a. Blue Stone Real Estate, Construction & Development Corp. Account No. xxxxxxx728 and escrow Account No. xxxxxx0503 at Regions Bank;

b. PDQ Acquisitions, LLC Account No. xxxxxxx546 at Regions Bank;

c. Avalon Investment Corp. of Hernando Account No. xxxxxxxxx754 at Bank of America;

d. DDD Ranch, Inc. Account No. xxxxxxx619 at Regions Bank;

e. Jet Bead, Inc. Account No. xxxxxxx333 at Regions Bank; and

f. TCB Acquistions, LLC Account No. xxxxxx562 (bank unknown to Court).

11. Regions Bank and Bank of America (and any other bank in which a debtor in possession account has been established for any of these Debtors) shall not otherwise add or delete any additional signatories without further order from this Court. Mr. Oscher is required to provide notice of this provision to all banks holding a DIP account for any of these Debtors.

12. Mr. Oscher is directed to immediately deposit check number 3037 in the amount of $1,250,000 made payable to "Debtor in Possession–Blue Stone Real

Estate Construction and Development" into Blue Stone Real Estate, Construction & Development Corp.'s DIP account at Regions Bank, without prejudice to any party in interest to seek a determination by the Court that the proceeds of such check are assets of the estate of one of the other Debtors.

13. The Court reserves jurisdiction to approve Mr. Oscher's compensation under section 330 upon the filing of an application for compensation, and Mr. Oscher may seek interim compensation not more than once every 120 days unless the Court permits a different procedure upon further motion, notice, and hearing.

14. Nothing in this order precludes the retention by Mr. Oscher of subordinates, including those who may be employed by the firm, in accordance with applicable bankruptcy law, including section 363.

DONE and ORDERED at Tampa, Florida, on August 9, 2008, *nunc pro tunc* to July 24, 2008, at 5:15 p.m.